# EXHIBIT A



CAPITAL PARTNERS, LLC

October 27, 2009

James M. Wilton
Ropes & Gray LLP
One International Place
Boston, MA 02110

RE: Holley Performance Products, Inc. ("Holley" or the "Company")

Dear Mr. Wilton:

Pursuant to our recent conversations, we are pleased to confirm the arrangements under which Ropes & Gray LLP will retain XMS Capital Partners, LLC (the "Firm") on behalf of the Company to act as financial advisor in connection with strategic and financial analysis of the Company described below.

1). **Scope of Engagement.** It is the intention of the Firm to offer objective, independent advice to Ropes & Gray LLP on behalf of the Company and its Board of Directors. During this engagement, we will perform such financial advisory services as are customary and appropriate and as you reasonably request including assisting the Company in evaluating potential shareholder value implications. Our engagement will include spending time with the senior management of Holley, performing due diligence on the Company's historical financial performance, current financial projections, reviewing potential near-term and longer-term opportunities for the Company and providing our perspective on the potential value of the company if the Board elected to pursue a sale of the company now or at some point in the future. Based on the financial information provided by the Company, the Firm will then deliver a presentation summarizing our findings (the "Report"). It is expected that this Report would be delivered within two months of the execution of this letter.

If, following the delivery of the Firm's Report, the Company elects to pursue any financing or strategic transactions, it is the Firm's objective that the Company will retain the Firm as financial advisor in connection with any such transactions. Financial advisory services in connection with any transaction would be subject to a separate engagement letter to be mutually agreed upon by the Company and the Firm.

2). **Fees.** The Company agrees to pay the Firm an Advisory Fee (the "Advisory Fee") of $75,000, $25,000 due upon the signing of this engagement letter and the remainder payable upon the delivery of the Report.

3). **Expenses.** In addition to the Advisory Fee, the Company agrees to reimburse the Firm for its reasonable out-of-pocket expenses incurred in connection with this engagement. These expenses include travel costs, document production and other customary expenses for this type of transaction, including the reasonable fees and disbursements of legal counsel, retained only with the Company's prior consent.



CAPITAL PARTNERS, LLC

4). **Disclosure.** Any document, advice, or analysis provided by the Firm hereunder will be solely for the use and benefit of Ropes & Gray LLP on behalf of the Company, the Board of Directors and senior management of the Company and will not be quoted, reproduced, summarized, or otherwise disclosed, nor will any reference to the Firm be made, without the Firm's prior written consent.

5). **Information.** The Company will furnish, or arrange to have furnished, to the Firm such information as the Firm believes appropriate to its engagement hereunder (all such information so furnished being the "Information"), and will update such Information as appropriate. The Company recognizes and consents to the fact that the Firm (i) will use and rely on the accuracy and completeness of the Information supplied or otherwise made available to the Firm without having any obligation to independently verify the same, (ii) does not assume responsibility for the accuracy or completeness of the Information or such other information, (iii) has no obligation to undertake an independent evaluation, appraisal or physical inspection of any assets or liabilities of the Company or the Purchaser, and (iv) with respect to any financial forecasts (including cost savings and synergies) that may be furnished to or discussed with the Firm by the Company or the Purchaser, will assume that they have been reasonably prepared and reflect the best then currently available estimates and judgment of the Company's or such Purchaser's management.

6). **Independent Contractor.** It is understood and agreed that the Firm is retained to act solely as financial advisor and, in such capacity, shall act as an independent contractor with duties solely to Ropes & Gray LLP on behalf of the Company and nothing in this letter agreement or the nature of the services shall be deemed to create a fiduciary or agency relationship between the Firm and the Company or its stockholders, creditors, employees or any other party.

7). **Term and Termination.** This engagement may be terminated by Ropes & Gray LLP or the Firm at any time (the "Term") upon written notice to that effect to the other party, it being understood that the provisions of Section 2 (Fees), 3 (Expenses), 4 (Disclosure), 7 (Term and Termination), 8 (Indemnity) and 9 (Miscellaneous) shall survive termination of this agreement.

8). **Indemnity.** In connection with engagements such as this, it is the Firm's policy to receive indemnification. The Company agrees to the provisions with respect to the indemnification of the Firm and the other matters set forth in Annex A. Annex A is incorporated by reference in its entirety into this letter.

9). **Miscellaneous.**
(a). The Firm is acting as Financial Advisor and is not an expert on, and cannot render opinions regarding, legal, accounting, regulatory or tax matters. You should consult with your other professional advisors concerning these matters before undertaking any proposed transaction(s).



CAPITAL PARTNERS, LLC

(b) No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby. This letter agreement shall inure to the benefit of and be binding on the Company, Ropes & Gray LLP, the Firm and their respective successors.

(c). In case any provision of this letter agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this letter agreement shall not in any way be affected or impaired thereby.

(d). This letter agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Delaware.

(e). Each of the Firm and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its shareholders) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this letter agreement.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to the Firm the duplicate copy of this letter agreement enclosed herewith. We are delighted to work with you on this very important assignment.

Very truly yours,

XMS Capital Partners, LLC

By _____
Scott A. Mulcahy
Managing Director

Ropes & Gray LLP,
on behalf of Holley Performance Products, Inc.
By _____
James M. Wilton
A Member of the Firm

Agreed and Accepted to as of the date
first written above:
Holley Performance Products Inc.
By _____
Thomas W. Tomlinson
Co- Chief Executive Officer and CFO

Annex A attached

1603 Orrington Ave., Suite 725, Evanston, IL 60201      3
12328603_2.DOC        Phone (847) 448-1311   Fax (847) 637-8128


CAPITAL PARTNERS, LLC

## Annex A

The Company agrees to indemnify XMS Capital Partners, LLC (the "Firm"), along with its affiliates and their respective directors, officers, employees, agents and controlling persons (the Firm and each such person being an "Indemnified Party") from and against any and all losses, claims, damages and liabilities, joint or several, to which such Indemnified Party may become subject under any applicable law, or otherwise and related to, arising out of, or in connection with, any transaction contemplated by the engagement letter of which this Indemnification Form is a part or the engagement of the Firm, pursuant thereto, and the performance by the Firm of the services contemplated thereby, and will reimburse each Indemnified Party for all expenses (including counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. The Company will not be liable under the foregoing to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from the Firm's bad faith or gross negligence.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of, or in connection with, any transaction, the engagement of the Firm pursuant to, or the performance by the Firm of the services contemplated by, the engagement letter except to the extent that any loss, claim, damage or liability is found in a final judgment by a court of competent jurisdiction to have resulted from the Firm's bad faith or gross negligence.

If the indemnification of an Indemnified Party provided for in this letter agreement is for any reason held unenforceable, although otherwise applicable in accordance with its terms, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and the Firm, on the other hand, of any contemplated transaction (whether or not such transaction is consummated) or (ii) if (but only if) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and the Firm, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and the Firm of any contemplated transaction (whether or not such transaction is consummated) shall be deemed to be in the same proportion that the total value paid or issued or contemplated to be paid or issued to the Company by the Purchaser, as a result of or in connection with any transaction, bears to the fees paid or to be paid to the Firm under the engagement letter; provided, however, that to the extent permitted by applicable law, in no event shall the Indemnified Parties be required to



contribute an aggregate amount in excess of the aggregate fees actually paid to the Firm under the engagement letter of which this Annex A is a part.

The Company agrees that it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under this letter agreement (whether or not the Firm or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified party from all liability arising out of such claim, action or proceeding.

If the Firm or any other Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or the Purchaser in which such party is not named as a defendant, the Company will reimburse the Firm for all expenses incurred in connection with such party's appearing and preparing to appear as such a witness, including, without limitation, the fees and disbursements of its legal counsel.

The provisions of this Annex A shall continue to apply and shall remain in full force and effect regardless of any modification or termination of the engagement or engagement letter of which this Annex A is a part or the completion of the Firm's services thereunder.