# EXHIBIT B

**Scott Mulcahy Declaration**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------------x
                                                     :

In re                                          :

                                                     :        **Chapter 11**

**HOLLEY PERFORMANCE**             :
**PRODUCTS INC., *et al.*,**[1]         :        **Case No. 09 – 13333 (PJW)**

                                                   :
                     **Debtors.**        :        **(Jointly Administered)**
                                                   :
---------------------------------------------------------------------x

## DECLARATION IN SUPPORT OF APPLICATION OF THE DEBTORS TO EMPLOY AND RETAIN XMS CAPITAL PARTNERS, LLC AS FINANCIAL ADVISOR FOR THE DEBTORS, AS OF THE PETITION DATE

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), Scott Mulcahy hereby declares as follows:

1. I am a Managing Director of XMS Capital Partners, LLC ("XMS"). I submit this Declaration on behalf of XMS in support of the application dated November 16, 2009 (the "Application")[2] of the above-captioned debtors (the "Debtors" or the "Company") to retain XMS as financial advisor under sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code") and to provide the disclosure required under Bankruptcy Rule 2014 and Local Rule 2014-1. Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires

---

[1] The Debtors are the following entities: Holley Performance Products Inc., a Delaware corporation (EIN XX-XXX1482); Holley Performance Products Holdings, Inc., a Delaware corporation (EIN XX-XXX3923); Nitrous Oxide Systems, Inc., a Delaware Corporation (EIN XX-XXX0663); Weiand Automotive Industries, Inc., a Delaware Corporation (EIN XX-XXX6699); and Holley Performance Systems, Inc., a Delaware Corporation (EIN XX-XXX8014). The Debtors' address is 1801 Russellville Road, Bowling Green, Kentucky 42101.

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

subsequent amendment or modification upon XMS's completion of further analysis or as additional creditor information becomes available, one or more supplemental declarations will be submitted to the court reflecting the same.

2. The terms and conditions of XMS's retention by the Debtors are set forth in the engagement letter between XMS and Ropes & Gray LLP on behalf of the Debtors (the "Engagement Letter"), which terms and conditions are summarized herein.

## QUALIFICATION OF PROFESSIONALS

3. The Debtors seek to retain XMS as their financial advisor because, among other things, XMS and its partners have extensive experience and an excellent reputation for providing high quality financial advisory and investment banking services, including the evaluation of and execution of important strategic assignments such as mergers, acquisitions, divestitures, and other strategic transaction engagements.

4. XMS is a boutique investment bank with a core expertise in complex strategic and financial transactions. XMS is adept at handling all strategic transaction types including acquisitions, divestitures, mergers, restructurings, fairness opinions, and valuations. XMS was founded on the principle of intense senior banker involvement in all aspects of a client engagement. Its partners average over 20 years of investment banking experience leading hundreds of billions of dollars of transactions globally during their careers.

5. Scott Mulcahy is a Managing Director at XMS Capital Partners and has over 17 years of investment banking experience. Mr. Mulcahy is the former head of Industrial Investment Banking for Morgan Stanley in the Midwest and led Morgan Stanley's efforts in the global automotive parts sector. Mr. Mulcahy and his partners at XMS have significant experience in providing financial advisory and investment banking services to industrial and auto

parts companies such as the Debtors. XMS principals have led the execution of financing or advisory transactions for Aeroquip-Vickers, Aftermarket Technologies, BorgWarner, Chrysler LLC, Dana Corporation, Eaton Corporation, The Ford Motor Company, Goodyear Tire & Rubber Company, Parker Hannifin, Tenneco, Inc., and The Timken Company, among others.

6.   XMS desires and is willing to act in these cases and render the necessary professional services as financial advisor to the debtors.

## SCOPE OF ENGAGEMENT

7.   The Engagement Letter provides that XMS will perform such financial advisory services as are customary and appropriate and as Ropes & Gray LLP, as counsel to the Debtors, reasonably requests to assist the Debtors in evaluating potential strategic alternatives. XMS's engagement will include spending time with the senior management of the Debtors, performing due diligence on the Debtors' historical financial performance and current financial projections, reviewing potential near-term and longer-term opportunities for the Debtors, and providing an independent perspective on the potential value of the Debtors if the Board of Directors elected to pursue a sale of the company now or at some point in the future. Based on the financial information provided by the Debtors, XMS will then deliver a presentation summarizing its findings (the "Report"). It is expected that this Report would be delivered prior to December 31, 2009.

8.   As described in the Engagement Letter, to the extent Ropes & Gray LLP, as counsel to the Debtors, requests XMS to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by XMS and the Debtors. In the event such further amendment to the Engagement Letter occurs, the revisions will be subject to the Court's review upon proper application by the Debtors.

9. The services that will be rendered by XMS are not duplicative with the services to be performed by any other individual or entity retained by the Debtors.

**PROFESSIONAL COMPENSATION**

10. In consideration of the financial advisory services described above, the Debtors agreed to pay XMS $75,000 (the "Advisory Fee"). Twenty five thousand dollars ($25,000) of the Advisory Fee became due upon signing the Engagement Letter and is payable upon bankruptcy court approval of XMS's retention. The remainder is payable upon the delivery of the Report.

11. XMS's proposed fee arrangement contains reasonable terms designed to compensate XMS fairly for the work of its professionals. The fee arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by XMS and other financial advisory firms with respect to rendering similar services for clients such as the Debtors.

12. In accordance with section 504 of the Bankruptcy Code, XMS has informed the Debtors that there is no agreement or understanding between XMS and any other entity, other than employees of XMS, for the sharing of compensation received or to be received for services rendered in connection with this case.

**FEE APPLICATIONS**

13. XMS understands that fees and expenses in these chapter 11 cases shall be subject to final approval of the Court upon proper application by XMS in accordance with procedures for the allowance of final compensation applicable to professionals in these chapter 11 cases and as established by further order of this Court. XMS has informed the Debtors that it is not the general practice of investment banking firms to keep detailed time records similar to

those customarily kept by attorneys and other professionals who are compensated on an hourly basis. Therefore, because XMS will be compensated in the form of the Advisory Fee, XMS will not maintain contemporaneous time records (in hourly increments or otherwise) for services rendered postpetition in hourly increments in connection with its interim and final fee applications.

## PRIOR COMPENSATION

14. XMS rendered no services prepetition and has accordingly received no payments from the Debtors prepetition.

## INDEMNIFICATION

15. Financial advisors rely heavily on information provided by debtors in making contacts with potential lenders, investors, buyers, or other parties to potential transactions. It is customary, for this reason, that financial advisors receive indemnification from the entities for whom they work. Annex A to the Engagement Letter includes an indemnification provision (the "Indemnity Provision") that is customary in scope. Annex A makes clear that no indemnification is available for losses that are determined by a final judgment by a court of competent jurisdiction to have resulted from an XMS's own bad faith or gross negligence.

16. Indemnification is a standard term of the market for investment bankers and financial advisors. XMS believes that the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to XMS and for comparable engagements, both in and out of court.

## DISINTERESTEDNESS OF PROFESSIONALS[3]

17. Except as otherwise set forth herein, to the best of my knowledge, the professionals of XMS (i) do not have any connection to (a) the United States Trustee or any person employed in the Office of the United States Trustee, or (b) any of the Debtors or their respective affiliates, creditors, or any other party in interest, or their respective attorneys and accountants, and (ii) do not hold or represent any interest adverse to the Debtors' estates.

18. XMS does not represent and has not represented any entity, other than the Debtors, in matters related to these chapter 11 cases.

19. XMS has in the past represented, currently represents, and likely in the future will represent certain creditors of the Debtors and other parties-in-interest, or their attorneys, accountants or investment banks, in matters unrelated to the debtors, these chapter 11 cases, or the claims of those entities against each or both of the Debtors. I have personally represented Parker Hannifin while at a previous firm in matters unrelated to the Debtors, but Parker Hannifin has not retained XMS.

20. XMS will disclose any further connections that it may subsequently discover.

21. Consequently, to the best of my knowledge:

a) Neither XMS nor any professional at XMS is or was a creditor, equity security holder, or insider of the Debtors;

b) Neither XMS nor any professional at XMS is or was an investment banker for any outstanding security issued by either of the Debtors;

c) Neither XMS nor any professional at XMS has been, within three years before the commencement of these chapter 11 cases, an investment banker for a security issued by either of the Debtors, or a

---

[3] The statements concerning XMS and its professionals concerning the disinterestedness of its professionals are based upon a conflicts check of XMS's database. To the extent that further disclosure is necessary, XMS will file a supplemental declaration. The entities subject to the conflicts check are set forth on Schedule 1, attached hereto and incorporated herein by reference.

professional for such an investment banker in connection with the offer, sale, or issuance of any security by either of the Debtors;

d) Neither XMS nor any professional at XMS is or was, within two years before the commencement of these chapter 11 cases, a director, officer, or employee of the Debtors or of an investment banker of the Debtors; and

e) XMS has no interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker for any security of the Debtors or for any other reason.

22. I am not related, and to the best of my knowledge no XMS professional is related, to the United States Trustee for this District or any employee of the United States Trustee's office.

23. As part of its practice, XMS provides services to many different attorneys, financial advisors, and creditors, some of which may represent or be claimants and/or parties-in-interest in these cases. XMS will have no relationship with any such entity, attorney, or financial advisor that would be materially adverse to the Debtors during these cases.

24. To the best of my knowledge, information, and belief, formed after reasonable inquiry, none of the services rendered by XMS to the entities set forth herein have been in connection with the Debtors or these chapter 11 cases. XMS believes that these relationships will not impair XMS's ability to perform professional services objectively on behalf of the Debtors. XMS will not accept any engagement that would require XMS to represent an interest materially adverse to the Debtors.

25. Despite the efforts described above to identify and disclose connections with parties-in-interest in these cases, because the Debtors are a large enterprise with numerous creditors and other relationships, XMS is unable to state with certainty that every client representation or other connection of XMS has been disclosed. If XMS discovers additional information requiring disclosure, XMS will file supplemental disclosures with the Court as promptly as possible.

26. To the best of my knowledge, information and belief formed after reasonable inquiry, XMS does not hold nor represent any interest materially adverse to the Debtors in the matters for which XMS is proposed to be retained. The proposed employment of XMS is not prohibited by or improper under Bankruptcy Rule 5002. Accordingly, I believe XMS is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and is otherwise qualified to represent the Debtors as their financial advisors under section 327(a) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Evanston, IL

Nov. 16, 2009

Scott Mulcahy

# SCHEDULE 1

ABCO Die Casters
Actuant Corporation
Aerotek Commercial Staffing
AIG Global Investment Corp.
Aim Business Capital LLC
Bingham McCutcheon LLP
BLP Products Inc.
Bond Street
Bonnie Anemone
Bowling Green Municipal
Branch Banking & Trust Company
Brendan L. Shannon
BRP US Inc.
Buddy Bar Casting Corp
Christine Green
Christopher S. Sontchi
Citation Corp - Columbiana
Daewha Fuel Pumps Ind. Ltd.
David Buchbinder
David Klauder
Diane Giordano
Dianne P. Dugan
Dion Wynn
Dorsey & Whitney LLP
Electrocraft Arkansas, Inc.
Freeborn & Peters LLP
Freeborn & Peters LLP
Freudenberg-Nok
Golden State Tool & Die
GP Performance Manufacturing
Hemingway & Sons Screw Products
Hy-Mark Cylinders Inc.
James R. O'Malley
Jane Leamy
Jeffrey Heck
Joanne E. Clausen
Joseph McMahon
Judith K. Fitzgerald
Kevin Gross
Kevin J. Cary
Key Electronics Inc.
Key Staff Source Inc
KHPP Holdings
Kongsberg Automotive

Las Cruces Machine & Mfg Co
Lauren O'Neal
Lawson Industries Inc
Lifeskills Inc.
Linda P. Logan
Mark Kenney
Martin Machine Works Inc
Marwil
Mary F. Walrath
Michael Panacio
Michael West
Micro Industries Inc.
Navistar, Inc.
Nexair LLC
Ore Hill Hub Fund Ltd.
Ore Hill Partners LLC
Parker Hannifin Corp
Patriot Gauges LLC
Paul Weiss Rifkind, Wharton & Garrison LLP
Pepper Hamilton LLP
Peter J. Walsh
Potter Anderson & Corroon LLP
Precision Industries Corp.
Precision Production Inc.
Ramona Vinson
Regiment Capital
Richard Schepacarter
Roberta A. Deangelis
Schulte Roth & Zabel LLP
Shakima L. Williams
Sumter Coating Inc.
Taurus International Corporation
The DECC Company Inc
The Troxel Company Inc
Thomas Patrick Tinker
U.S. Bank, as Indenture Trustee for the 12.5% Senior Second Lien Secured Notes due 2013
UBS Willow Fund, LLC
Valley Packaging Corp
Wells Fargo Bank, NA
Wells Fargo Foothill, Inc.
William K. Harrington
Willis of Tennessee, Inc
Young Conaway Stargatt & Taylor, LLP