UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x

In re

HOLLEY PERFORMANCE
PRODUCTS INC., et al.,[1]

                Debtors.

------------------------------------------------------------x

Chapter 11

Case No. 09 – 13333 (PJW)

(Jointly Administered)
Related Docket No. 167

## ORDER APPROVING BIDDING PROCEDURES AND BREAK-UP FEE IN CONNECTION WITH PROPOSED SALE OF THE HOLLEY CLEAN POWER BUSINESS AND RELATED ASSETS

Upon the motion (the "Motion")[2] of Holley Performance Products Inc., on behalf of itself and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), for an order (this "Order") (a) authorizing bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale (the "Asset Sale") of the Holley Clean Power original equipment manufacturer business (the "Product Line") and related assets (collectively, the "Purchased Assets") to Actuant Corporation ("Buyer") pursuant to that certain Asset Purchase Agreement between Buyer and Holley Performance Products Inc. dated November 23, 2009 (the "Stalking Horse Purchase Agreement") or another bidder submitting a higher or better offer at a proposed auction (the "Auction"); (b) authorizing a break-up fee (the

---

[1] The Debtors are the following entities: Holley Performance Products Inc., a Delaware corporation (EIN XX-XXX1482); Holley Performance Products Holdings, Inc., a Delaware corporation (EIN XX-XXX3923); Nitrous Oxide Systems, Inc., a Delaware Corporation (EIN XX-XXX0663); Weiand Automotive Industries, Inc., a Delaware Corporation (EIN XX-XXX6699); and Holley Performance Systems, Inc., a Delaware Corporation (EIN XX-XXX8014). The Debtors' address is 1801 Russellville Road, Bowling Green, Kentucky 42101.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

#11756301 v3

23876304_10.DOC

"Break-Up Fee") and expense reimbursement (the "Expense Reimbursement") in connection therewith; (c) scheduling an Auction and a hearing to consider approval of the Asset Sale (the "Sale Hearing"); and (d) approving the form and manner of notice of this Motion and the Sale Hearing; and requesting that this Court grant the relief concerning the Bidding Procedures sought in the Motion pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and the Court having reviewed pleadings filed by counsel to the Debtors, and based on all of the evidence, including any evidence proffered at a hearing regarding the Bidding Procedures held this date (the "Bidding Procedures Hearing"), representations and offers of proof made by counsel, and argument of counsel; and on the entire record of the Bidding Procedures Hearing; and any objections having been filed having been resolved, withdrawn, or overruled, and there appearing good cause therefor:

IT IS HEREBY FOUND AND CONCLUDED, pursuant to Rules 7052 and 9014 of the Bankruptcy Rules, that:

A. On September 28, 2009 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of title 28 of the United States Code (the "Judicial Code"). This is a core proceeding pursuant to Section 157(b)(2) of the Judicial Code. Venue of the Chapter 11 Cases in this District is proper

pursuant to Section 1408 of the Judicial Code, and venue of this contested matter is proper pursuant to Section 1409(a) of the Judicial Code.

C. The Debtors have provided notice of the relief sought with respect to the Bidding Procedures and the other relief requested in the Motion to: (a) the Office of the United States Trustee for the District of Delaware (the "US Trustee"); (b) counsel to the Indenture Trustee for the Debtors' Second Lien Notes; (c) counsel to Wells Fargo Foothill, Inc.; (d) the creditors holding the 30 largest unsecured claims against the Debtors' estates on a consolidated basis; (e) all parties known to have asserted liens against the Purchased Assets; (f) federal and state taxing authorities' offices which have a reasonably known interest in the relief requested in the Motion; (g) counsel to Buyer; (h) counsel to the Majority Secured Noteholders; and (i) all parties who have filed notices of appearance requesting service of notices and pleadings in this case and any party that has expressed an interest in a transaction with respect to the Purchased Assets within the last twelve months (the "Core Notice Parties"). The notice of and opportunity to be heard with respect to the Bidding Procedures was proper, timely, adequate, and sufficient, meets the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, is reasonably calculated to give actual notice of the relief contemplated hereby, and is appropriate under the circumstances, and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice.

D. The approval of the Bidding Procedures is in the best interest of the Debtors, their estates, their creditors, and other parties in interest. The Debtors' determination to propose and to agree to such provisions is within their reasonable business judgment. Each of the Break-Up Fee and the Expense Reimbursement (a) is an actual and necessary cost and expense of

preserving the Debtors' estate, within the meaning of section 503(b) of the Bankruptcy Code; (b) is of substantial benefit to the Debtors' estate and the collateral of parties asserting liens, security interests, encumbrances or other interests in and to the Purchased Assets, which are adequately protected from any diminution arising from such Break-Up Fee and Expense Reimbursement; (c) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by Buyer notwithstanding that the proposed sale is subject to higher or better offers for the Purchased Assets; (d) was negotiated by the parties at arms' length and in good faith; and (e) is necessary to ensure that Buyer will continue to pursue its proposed acquisition of the Purchased Assets. The Break-Up Fee and the Expense Reimbursement were a material inducement for, and condition of, Buyer's entry into the Stalking Horse Purchase Agreement. Thus, assurance to Buyer of payment of the Break-Up Fee and Expense Reimbursement will promote more competitive bidding by inducing Buyer's bid that otherwise would not have been made, and without which bidding would have been limited.

E. There is a need to have the auction of the Purchased Assets proceed as rapidly as possible, due to the continuing underuse of the Product Line.

WHEREUPON, IT IS HEREBY ORDERED THAT:

### Approval of Bidding Procedures; Notices

1. The relief sought in the Motion concerning the Bidding Procedures is granted. To the extent that there is any conflict between the provisions of this Order and the provisions of the Motion or the Stalking Horse Purchase Agreement, the terms of this Order shall control. The Bidding Procedures annexed hereto as Exhibit A shall be, and hereby are, approved. The Notice

of Sale, annexed to the Motion as <u>Exhibit D</u>, as such notice may be amended appropriately to conform with the provisions of this Order, shall be, and hereby is, approved.

2. Within two business days of the entry of this Order, the Debtors shall serve by first-class mail, postage pre-paid (i) this Order and the Notice of Sale upon the Core Notice Parties, and (ii) the Notice of Sale upon all other persons entitled to notice pursuant to Bankruptcy Rule 2002(a)(2).

3. The form and manner of notice set forth in the preceding paragraph and in paragraph 5, below, is reasonable and sufficient to provide effective notice to all interested parties and shall be, and hereby is, approved as sufficient notice of the Bidding Procedures, the Sale Hearing, the Motion and all relief (not granted or otherwise addressed by this Order) contemplated thereby, and the assumption or assignment of the Assigned Contracts.

4. Objections to the Motion (except as related to this Order) and/or the Stalking Horse Purchase Agreement must: (a) be in writing; (b) state the legal and factual basis for such objection; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Clerk of the Bankruptcy Court; and (e) be served on (i) counsel for the Debtors, Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, Attn: James M. Wilton, and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, Attn: David B. Stratton; (ii) counsel to Buyer, McDermott Will & Emery LLP, 227 W. Monroe Street, Chicago, IL 60606, Attn: Nathan F. Coco; (iii) counsel to Wells Fargo Foothill, Inc., Bingham McCutchen LLP, One Federal Street, Boston, MA 02210-1726, Attn: Julia Frost-Davies; (iv) counsel to the Indenture Trustee for the Debtors' Second Lien Notes, Dorsey & Whitney LLP, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402-1498, Attn: Katherine A. Constantine; (v) counsel to the Majority Secured Noteholders, Paul, Weiss, Rifkind, Wharton

& Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064, Attn: Andrew N. Rosenberg; and (vi) counsel to the US Trustee, J. Caleb Boggs Federal Building, Suite 2207, Wilmington, DE 19801, Attn: David L. Buchbinder before the Bidding Deadline (collectively, the "Service Parties"), so as to be received no later than 12:00 noon (Prevailing Eastern Time), on the third business day prior to the date of the Auction (the "Objection Deadline"). Any objection not filed and served strictly in compliance with this paragraph shall be overruled.

### Procedures Related to Assumption and Assignment of Executory Contracts

5. Within two business days of the entry of this Order, the Debtors shall serve by first-class mail, postage pre-paid, a copy of this Order and a notice of the Motion and Sale Hearing, substantially in the form of notice annexed to the Motion as Exhibit E (as such notice may be amended appropriately to conform with the provisions of this Order) (the "Assigned Contract Notice"), on all non-debtor parties to executory contracts that may be assigned to Buyer in connection with the closing of the Asset Purchase Agreement (the "Assigned Contracts"), with each such notice setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors assumed or assumed and assigned such executory contract or unexpired lease to Buyer.

6. The Assigned Contract Notice provides ample notice of the relief requested, the relative impact that such relief may have on the counterparties to the Assigned Contracts, and the procedures that such counterparties must follow to respond, participate in the Auction, or otherwise object to the relief requested, as the case may be.

7. Any interested party seeking to object to (a) the assumption and assignment to Buyer, or another bidder providing a higher or otherwise better offer at the Auction, of an Assigned Contract or (b) the validity of the cure amount, if any, set forth in the Assigned

-6-
#11756301 v3

Contract Notice, or otherwise assert that any amounts, defaults, conditions, or pecuniary losses as of the Petition Date (including accrued but not yet due obligations) must be cured or satisfied under any of the Assigned Contracts in order for such contract to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Cure Objection") so that such Cure Objection is received by the Service Parties not later than 12:00 noon (Prevailing Eastern Time) on the third business day prior the date of the Auction (the "Cure Objection Deadline"). Cure Objections shall set forth with specificity any and all Cure Obligations or conditions which the objecting party asserts must be cured or satisfied with respect to the subject Assigned Contract, including the cure amount that the objector asserts is due, the specific types and dates of any alleged defaults, pecuniary losses and conditions to assignment, and the support therefor, and all other objections to assumption and assignment.

8. Any non-debtor party to any Assigned Contract that receives notice of the proposed assumption or assignment of such Assigned Contract and does not file and serve a Cure Objection by the Cure Objection Deadline strictly in accordance with this Order (a) shall be deemed (i) to have waived and released any right to assert a Cure Obligation and (ii) to have given the consent contemplated by sections 365(c)(1)(B) and 365(f)(1) of the Bankruptcy Code to the assumption and assignment of such Assigned Contract to Buyer, or another bidder providing a higher or otherwise better offer at the Auction, upon payment of the cure amounts, if any, specified in the subject Assigned Contract Notice, and (b) shall be forever barred and estopped from asserting or claiming against the Debtors, Buyer, or any other assignee of the relevant assigned contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Contract.

#11756301 v3

23876304_11.DOC

9. Hearings with respect to Cure Objections may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate; provided, that if the subject Assigned Contract is assumed and assigned prior to resolution of any Cure Objection, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by Buyer to be held in a segregated account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

## Auction & Sale Hearing

10. An auction (the "Auction") for the Purchased Assets will be conducted by the Debtors at the offices of their counsel, Ropes & Gray LLP, One International Place, Boston, Massachusetts, on January 5, 2010, at 10:00 a.m. (Prevailing Eastern Time) or at such other date and time as designated by the Debtors in their sole discretion exercised in good faith.

11. The Sale Hearing will be conducted on January 7, 2010, at 10:30 a.m. (Prevailing Eastern Time). The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Purchased Assets to Buyer or another bidder submitting a higher or better offer at the Auction. The Sale Hearing may be continued from time to time without further notice, other than announcements made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

12. The Court may authorize the Debtors pursuant to the Sale Order to close the sale with the next highest bidder if the highest bidder approved at the Sale Hearing fails to timely close the Sale. Any deposits made by bidders may be held in escrow until the eleventh business day after entry of the Sale Order in connection with such closing.

## Break-Up Fee and Expense Reimbursement

13. Payment of the Break-Up Fee and the Expense Reimbursement in accordance with Sections 7.2 and 9.2 of the Stalking Horse Purchase Agreement is hereby approved, and the Break-Up Fee and the Expense Reimbursement are authorized and directed to be paid at the time and under the circumstances set forth in the Stalking Horse Purchase Agreement and shall be entitled to priority under the Bankruptcy Code as an administrative expense over all prepetition claims. The Expense Reimbursement shall be paid by the Debtors within three (3) business days after it becomes due and payable under the Stalking Horse Purchase Agreement without further order of the Court. The Break-Up Fee shall be paid at closing from the first proceeds of any sale of the Purchased Assets prior to the attachment to such proceeds of any lien, security interest, or other encumbrance without further order of the Court.

14. If Buyer elects to participate in bidding at the Auction, the amount of the Break-Up Fee shall be considered as if added to Buyer's bid in determining whether Buyer's bid is a higher and better offer for the Purchased Assets.

## General

15. Nothing in this Order shall affect the rights of Buyer or another bidder submitting a higher or better offer at the Auction, prior to the Auction, to add or remove any executory contract or unexpired lease of the Debtors from the list of Assigned Contracts. The Debtors shall file with the Court a list of the Assigned Contracts to be assumed and assigned on or before the date of the Sale Hearing.

16. The Debtors shall promptly provide copies of any Counteroffers (as defined in the Bidding Procedures) received by the Debtors to counsel to Wells Fargo Foothill, Inc., and counsel to the Majority Secured Noteholders.

-9-
#11756301 v3

23876304_11.DOC

17. As provided in Bankruptcy Rule 6004(h) and 6006(d), this Order shall not be stayed for ten days after the entry hereto and shall be effective and enforceable immediately upon the entry hereof.

18. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact set forth herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law set forth herein constitute findings of fact, they are adopted as such.

19. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20. The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Order in accordance with the Motion.

21. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

22. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SO ORDERED.

Dated: Dec 9, 2009
Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

#11756301 v3

23876304_11.DOC