## Exhibit A

## BIDDING PROCEDURES FOR AUCTION OF THE
## HOLLEY CLEAN POWER BUSINESS AND RELATED ASSETS

The following bidding procedures shall apply in connection with counteroffers for certain assets of Holley Performance Products Inc. (the "Purchased Assets") as described in the Asset Purchase Agreement dated November 23, 2009 between Holley Performance Products Inc. ("Seller," and, together with the Seller's debtor-affiliates in the above-captioned chapter 11 cases, the "Debtors") and Actuant Corporation ("Buyer") (such agreement, the "Stalking Horse Purchase Agreement"):1

1. Any counteroffer or bid for any of the Purchased Assets (a "Counteroffer") shall comply with the following requirement, which may not be waived by the Debtors:

    1.1. Any Counteroffer shall provide for a purchase price with a minimum cash component payable at closing of $3,300,000.

2. Any Counteroffer shall further comply with all of the following requirements; provided, that the Debtors may, in their discretion exercised in good faith and without further order of the Court, waive any such requirements:

    2.1. Any Counteroffer shall:

        2.1.1. be in writing and be served on counsel to the Debtors, Ropes & Gray LLP, One International Place, Boston, Massachusetts 02110-2624, Attn: James. M. Wilton and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, Attn: David B. Stratton, so as to be received on or before 12:00 noon (Prevailing Eastern Time) on December 29, 2009 (the "Bid Deadline"), three business days prior to the first scheduled date of the Auction; and

        2.1.2. be accompanied by (i) a deposit in the amount of ten percent of the initial bid, delivered to Ropes & Gray LLP, by certified or cashier's check or wire transfer, so as to be received on or before January 4, 2010, the last business day prior to the first scheduled date of the Auction (as defined below); (ii) an executed asset purchase agreement (the "Counteroffer Asset Purchase Agreement") and executed copies of all other transaction documents necessary to effect the proposed transaction (including all schedules) and a copy of the Stalking Horse Purchase Agreement marked to show all changes requested by the bidder (including those related to

---

1 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the order approving these bidding procedures.

#11756301 v3

23876304_10.DOC

purchase price); (iii) an executed confidentiality agreement; and (iv) written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction and payment of the purchase price in cash at the Closing.

2.2. The entity submitting a Counteroffer shall enter into joint escrow instructions with Seller and Ropes & Gray LLP regarding the deposit delivered in connection with such Counteroffer.

2.3. The terms and conditions of the Counteroffer must be, in aggregate, not materially more burdensome to Seller than provisions contained in the Stalking Horse Purchase Agreement.

2.4. Any entity submitting a Counteroffer shall demonstrate to Seller's satisfaction, in Seller's sole discretion exercised in good faith, that such entity is able to consummate the transaction on the date and on the terms contemplated by the Counteroffer Asset Purchase Agreement.

3. An auction (the "Auction") for the Purchased Assets will be conducted by the Debtors at the offices of their counsel, Ropes & Gray LLP, One International Place, Boston, Massachusetts, on January 5, 2010, at 10:00 a.m. (Prevailing Eastern Time), or at such other date and time as determined by the Debtors in their sole discretion exercised in good faith and after consultation with counsel to, respectively, Wells Fargo Foothill, Inc., and the Majority Secured Noteholders (collectively, the "Interested Parties").. The Debtors will send notice by electronic mail to the Core Notice Parties and counsel to any entity that has submitted a Counteroffer if the date, time, or place of the Auction changes.

   3.1. The Debtors and its professionals will direct and preside over the Auction.

   3.2. At the Auction, the Debtors may announce additional procedural or bidding rules for the Auction so long as the rules are not inconsistent with these Bid Procedures. The Debtors shall maintain a transcript of all bids made and announced at the Auction.

   3.3. Each bidder participating at the Auction will certify on record at the commencement of the Auction that it has not and will not engage in any collusion with respect to the bidding or the sale.

   3.4. The Debtors will continue the Auction until there is only one bid that the Debtors determine in their sole discretion exercised in good faith, and after consultation with counsel to the Interested Parties, is the highest or otherwise best bid for the Purchased Assets.

   3.5. Each subsequent bid at the Auction must comply with the requirements for a Counteroffer set forth herein and be at least $100,000 greater than the preceding bid.

#11756301 v3

23876304_11.DOC

4. A hearing to consider approval of the sale to Buyer pursuant to the Stalking Horse Purchase Agreement or another bidder submitting a higher and better offer at the Auction and any objections to such sale will be held on January 7, 2010, at 10:30 a.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, Sixth Floor, Courtroom 2.