UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------x
                                          :
**In re**                                 :
                                          :  **Chapter 11**
**HOLLEY PERFORMANCE**                    :
**PRODUCTS INC.,** *et al.*,[1]           :  **Case No. 09 – 13333 (PJW)**
                                          :
                        Debtors.          :  **(Jointly Administered)**
                                          :  Related Docket No. 167
------------------------------------------------------------x

## ORDER (I) APPROVING AND AUTHORIZING SALE OF THE HOLLEY DIESEL OEM PRODUCT LINE AND RELATED ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] of the above-captioned debtors (the "Debtors"), for an order (the "Order") pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the Debtors to (i) sell the Holley Diesel OEM original equipment manufacturer business (the "Product Line"), the Products (as defined in the Asset Purchase Agreement), and related assets, including intellectual property, to Actuant Corporation or another purchaser submitting a higher or better offer free and clear of liens, claims, encumbrances, and other interests and (ii) assume and assign certain executory contracts; and this Court having determined that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, its creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor;

---

[1] The Debtors are the following entities: Holley Performance Products Inc., a Delaware corporation (EIN XX-XXX1482); Holley Performance Products Holdings, Inc., a Delaware corporation (EIN XX-XXX3923); Nitrous Oxide Systems, Inc., a Delaware corporation (EIN XX-XXX0663); Weiand Automotive Industries, Inc., a Delaware Corporation (EIN XX-XXX6699); and Holley Performance Systems, Inc., a Delaware corporation (EIN XX-XXX8014). The Debtors' address is 1801 Russellville Road, Bowling Green, Kentucky 42101.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

adequate notice having been given and a hearing having been held on January 7, 2010 (the "Hearing"); the Court having considered the testimony, documentary evidence, offers of proof (to the extent consented to by the parties), stipulations of the parties, and the arguments of counsel; and this Court having determined that Navistar, Inc. ("Buyer") has submitted the highest and best offer for the Purchased Assets; and Cummins Inc. (the "Backup Buyer") having submitted the second highest and best offer for the Purchased Assets; and good cause otherwise having been shown for the relief requested;

NOW, upon the Sale Motion, the exhibits annexed thereto, the evidence presented at the Hearing and the arguments of counsel advanced at the Hearing, and all prior pleadings and proceedings made herein,

THE COURT HEREBY FINDS:

A. This Court, pursuant to 28 U.S.C. § 1334, has jurisdiction over all assets of the Debtor and its chapter 11 estate. The Sale Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue of the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The Asset Purchase Agreement proposed by Buyer, as modified on the record of the Sale Hearing (the "Asset Purchase Agreement"), and the Asset Purchase Agreement proposed by the Backup Buyer, as modified on the record at the Sale Hearing (the "Backup Asset Purchase Agreement"), were each offered in good faith, from arm's-length bargaining positions without collusion or fraud, by the parties.

C. The Debtors and their advisers have diligently and in good faith marketed the Purchased Assets to secure the highest and best offer or offers therefor. The total consideration provided for in the Asset Purchase Agreement entered into with Buyer, and the transactions

contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets, and constitutes (a) reasonably equivalent value under the Bankruptcy Code, and (b) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or District of Columbia, for the Purchased Assets.

D. The Debtors have demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code prior to, and outside of, a plan of reorganization.

E. The Asset Purchase Agreement must be approved promptly in order to preserve the value of the Purchased Assets. The Asset Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets, and the Asset Purchase Agreement and the closing thereunder will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

F. Buyer has acted in good faith in this matter, and is a good faith purchaser as that term is used in the Bankruptcy Code, and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

G. Backup Buyer has also acted in good faith in this matter, and, to the extent the sale of the Purchased Assets is closed with the Backup Buyer, is a good faith purchaser as that term is used in the Bankruptcy Code and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

H. With respect to any and all persons or entities asserting any Claim (as defined in the Asset Purchase Agreement), Interest (as defined in the Asset Purchase Agreement) or

Encumbrance (as defined in the Asset Purchase Agreement) on, with respect to or in connection with the Purchased Assets, (i) applicable non-bankruptcy law permits sale of such property free and clear of such Claim, Interest, or Encumbrance; (ii) such person or entity has consented to the sale and transfer, license, and assignment as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license, and assignment, as applicable, in the same order of priority and with the same validity, force and effect as existed with respect to the Purchased Assets immediately prior to the sale and transfer; (iii) such Encumbrance is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such Encumbrance is in bona fide dispute; and/or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Claim, Interest, or Encumbrance; so that the conditions of section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Claims, Interests, or Encumbrances who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims, Interests, or Encumbrances who did object fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

I. All defaults (other than defaults of the type specified in section 365(b)(2) of the Bankruptcy Code) under the contracts set forth in <u>Schedule A</u> hereto (the "<u>Closing Date Assigned Contracts</u>") will be cured at or prior to Closing, as a result of which all defaults necessary to be cured will have been cured, and adequate assurance of Buyer's future performance under the Closing Date Assigned Contracts has been provided within the meaning of sections 365(b) and (f)(2)(B) of the Bankruptcy Code.

J.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Closing Date Assigned Contracts to the Buyer and that the assumption and assignment of the Closing Date Assigned Contracts is in the best interest of the Debtors and their chapter 11 estates.

K.  Based on the representations tendered and the evidence presented at the Sale Hearing, the Debtors have articulated reasonable business judgment and have demonstrated good faith for seeking the sale of the Intellectual Property (as defined below) to the Buyer. The Court finds that a prompt sale of the Intellectual Property is required if the Debtors and their estates are to obtain maximum value from the Intellectual Property and that consummation of the sale will result in the maximization of value of the Debtors' estates. The Court further finds that approval of the sale is in the best interests of the Debtors, their estates, and the Debtors' creditors and, after consideration of all salient factors, there are good and sufficient business justifications for the sale of the Intellectual Property to the Buyer, outside of the context of a plan of reorganization or liquidation, and that a sound business purpose for such sale has been established.

L.  The transfer of the Intellectual Property from the Debtors to the Buyer will be a legal, valid, and effective transfer of the Intellectual Property and will vest the Buyer with all right, title, and interest of the Debtors and their estates to the Intellectual Property free and clear of any interests, provided that any interests shall attach to the proceeds of such sale and transfer in the same order of priority and with the same validity, force and effect as existed with respect to the Intellectual Property immediately prior to the sale and transfer. The Buyer is assuming no liabilities with respect to the Intellectual Property.

M. The assumption and immediate assignment of the Closing Date Assigned Contracts to Buyer is subject to all the provisions of the Asset Purchase Agreement. Each and every provision of the Closing Date Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any of the Closing Date Assigned Contracts has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

N. Under all the circumstances presented, (i) all actions contemplated in the Asset Purchase Agreement; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Purchased Assets by the Debtors to Buyer; (iv) the assumption and immediate assignment to Buyer of the Closing Date Assigned Contracts; and (v) the receipt by the Debtors of the Purchase Price are in the best interests of the Debtors and their estates, creditors, and interest holders.

O. Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.

P. The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with as they are applicable to the transfer of the Purchased Assets and the assumption and assignment of the Closing Date Assigned Contracts by the Debtors to Buyer.

Q. The Debtors and/or Buyer have given due and proper notice of the proposed sale of the Purchased Assets to all parties required to receive notice, including without limitation, to each secured party, all holders of Encumbrances of record with respect to the Purchased Assets, all of the counterparties to the Closing Date Assigned Contracts, all municipalities and licensing agencies, and any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) having a claim against the Debtors or the Purchased Assets, and all entities

6

#11928945 v1
11928945_1

reasonably known to have expressed an interest in a transaction with respect to the Purchased Assets during the past twelve months.

R. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Purchased Assets, has been afforded to all interested parties and entities.

S. Except with respect to liabilities expressly assumed in the Asset Purchase Agreement, the Closing and the consummation of the transactions contemplated by the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition operation of the business of the Debtors or the postpetition operation of the business of the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors, and no common identity of incorporators, directors, or stockholders exists between the Buyer and the Debtors. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets. The transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing, the Buyer shall be deemed to have assumed only the liabilities expressly assumed in the Asset Purchase Agreement. Except for those assumed liabilities, the Buyer's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Buyer's operation and use of the Purchased Assets acquired from the Debtors shall not be deemed a continuation of the Debtors'

business. The Court finds that the Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

T. Neither the Debtors, the Buyer, or the Backup Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the transactions contemplated thereby to be avoided or avoidable, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Neither the Buyer or the Backup Buyer is an "insider" or "affiliate" of the Debtors (as such terms are defined in the Bankruptcy Code).

U. As of the Closing under the Asset Purchase Agreement, the cure amounts for the Closing Date Assigned Contracts, including the amounts relating to the period prior to the Petition Date, as set forth on <u>Schedule A</u> hereto, will have been paid or adequate provision for the prompt cure of such defaults will have been made, and Buyer has provided each of the counterparties to the Closing Date Assigned Contracts with adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code. Therefore, no uncured default shall exist under the Closing Date Assigned Contracts, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default under the Closing Date Assigned Contracts. Upon assignment and sale to the Buyer, the Closing Date Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

V. The cure amounts listed on <u>Schedule A</u> are the full and complete cure amounts due for existing defaults under the Closing Date Assigned Contracts arising on or prior to the Petition Date.

W. Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time

constraints set forth in the Asset Purchase Agreement. Accordingly, the Court finds that there is cause to waive and/or vacate the stays imposed by Rules 6004(h) and 6006(d) of the Bankruptcy Rules, and such stays are hereby vacated and shall have no application to the relief afforded by this Order.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1. The Sale Motion is hereby granted in all respects. All objections with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits. The Asset Purchase Agreement, an executed copy of which was filed with the Court, is approved in all respects.

2. The Debtors are hereby authorized, empowered, and directed, and, upon entry of this Order, have all the power and authority necessary to:

   a. Fully perform under, consummate, implement, execute, and deliver the Asset Purchase Agreement and all other documents contemplated thereby, including, without limitation, the Interim Operating Agreement attached as Exhibit C to the Asset Purchase Agreement (the "Interim Operating Agreement"), to consummate the transactions contemplated by the Asset Purchase Agreement, and to take all other actions required to be taken pursuant to the Asset Purchase Agreement;

   b. Transfer the Purchased Assets to Buyer and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Purchased Assets to Buyer;

   c. Assume and assign the Closing Date Assigned Contracts effective upon the Closing and upon the terms and conditions set forth in the Asset

9

Purchase Agreement;

d. Receive the consideration described in the Asset Purchase Agreement from Buyer and take any action necessary to effectuate the receipt of such consideration; and

e. Fully perform and take all action necessary to effectuate the Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

3. No other or further consents or approvals of this Court are required for the Debtors to consummate or effectuate (i) the Asset Purchase Agreement, (ii) the Interim Operating Agreement, (iii) the transfer of the Purchased Assets, (iv) the assumption and assignment to Buyer of the Closing Date Assigned Contracts, or (v) the receipt of consideration from Buyer.

4. Upon the Closing, the Debtors shall pay $1,250,000 in cash to Wells Fargo Foothill, Inc., the administrative agent ("Wells Fargo") for the Credit Facility (as defined in the Declaration of Thomas W. Tomlinson in Support of Chapter 11 Petitions and First Day Motions and Applications, dated September 27, 2009 [Dkt. No. 2] (the "First Day Declaration"), which amount shall be applied to the principal balance of the Term Loan (as defined in the First Day Declaration).

5. Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to Buyer, and, upon the Closing under the Asset Purchase Agreement, the Purchased Assets shall be free and clear of any and all Claims, Interests, and Encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtors'

10

business, whether arising prior to or subsequent to the commencement of the Debtors' cases under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of any of these chapter 11 cases), and whether imposed by agreement, understanding, law, equity, or otherwise, which Claims, Interests, and Encumbrances, if any, shall attach to the proceeds of the sale in the same order of priority and with the same validity, force and effect as existed with respect to the Purchased Assets immediately prior to the sale and transfer. Except as expressly permitted by the Asset Purchase Agreement and this Order, all persons or entities holding or asserting any Claims, Interests, and Encumbrances of any kind or nature with respect to the Purchased Assets or business formerly conducted by the Debtor shall be, and hereby are, barred from asserting such Claims, Interests, and Encumbrances against Buyer, its successors and assigns, or the Purchased Assets.

6. This Order is and shall be effective as a determination that, upon closing of the Sale under the Asset Purchase Agreement, all Claims, Interests, and Encumbrances existing as to the intellectual property included in the Purchased Assets (the "Intellectual Property") have been and hereby are terminated and declared to be unconditionally released, discharged, and terminated solely as to the Intellectual Property, and such determination shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, and local officials, and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report on insure any title or state of title in or to any of the Intellectual Property, including, without limitation, the Commissioner of Patents and other employees of the U.S. Patent & Trademark Office. The Buyer and the Debtors

each shall take such further steps and execute such further documents, assignments, instruments, and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated by this Order and the Asset Purchase Agreement. Such steps include, without limitation, execution of the documents attached to the Asset Purchase Agreement and transfer of all documents and files, including attorney files, in paper and electronic file form, and all other things, including all prototypes, working models, and other devices or things relating to the Intellectual Property and the inventions described therein and defined thereby. Subject to closing the transactions contemplated by the Asset Purchase Agreement, all Claims, Interests, and Encumbrances as of the date of this Order shall be forthwith removed and stricken as against the Intellectual Property. All persons or entities described in this paragraph, including the Debtors and the Buyer, are authorized and (except for the Buyer and the Debtors) directed to strike all such recorded Claims, Interests, and Encumbrances against the Intellectual Property from their records, official and otherwise.

7. Upon the Closing, all right, title, and interest in and to the Intellectual Property shall be immediately vested in the Buyer pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of any and all Claims, Interests, and Encumbrances, with such Claims, Interests and Encumbrances to attach to the sale proceeds of the Intellectual Property with the same validity, priority, force, effect and perfection as existed immediately prior to the sale.

8. The Court reserves jurisdiction over the Intellectual Property to effectuate the terms of this Order, including the turnover or surrender or possession of the Intellectual Property by any person or entity to the Buyer on the Closing, including, without limitation, the Debtors' prosecution history files and the Debtors' attorneys' prosecution history files and all other related documents and files, including attorney documents and files, in paper

and electronic file form, and all other things, including all prototypes, working models, and all other devises or things relating to the Intellectual Property and the inventions described therein and defined thereby.

9. In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Closing Date Assigned Contracts to the Buyer, (i) the Buyer shall have all of the rights of the Debtors thereunder and each provision of such Closing Date Assigned Contracts shall remain in full force and effect for the benefit of the Buyer notwithstanding any provision in any such Closing Date Assigned Contracts or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) neither the Closing Date Assigned Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the transaction contemplated by the Asset Purchase Agreement.

10. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Buyer or its successors and assigns with respect to any Claim, Interest, or Encumbrance. Without limiting the generality of the foregoing, Buyer shall have no liability for any Claim against the Debtors or their directors, officers, or shareholders, whether such Claim is known or unknown, matured or unmatured, liquidated or unliquidated, contingent or non-contingent. ~~Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Court hereby issues a permanent injunction against the holders of any Claims, Interests, and Encumbrances against the Debtors or the Intellectual Property with respect to assertion of or taking any action to collect or enforce such Claims, Interests, and Encumbrances against the Intellectual Property or the Buyer.~~

13

11. Except as expressly provided in the Asset Purchase Agreement, the consummation of the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition or postpetition operation of the business of the Debtors in any form or manner whatsoever, including, without limitation, by reason of any theory of successor or transferee liability, *de facto* merger, or substantial continuity, whether known or unknown and whether asserted or unasserted as of the Closing, including without limitation for any claims for returns or warranties relating to conduct of the Debtors' business by the Debtors prior to the Closing.

12. Wells Fargo has consented to the sale and the release of its security interests in the Purchased Assets (with its liens to attach to the proceeds of the sale) and agrees at the Debtors' expense (i) to execute and deliver lien releases in customary form for filing with the Patent and Trademark Office within five (5) business days after the closing of the sale and (ii) to take such further action as may be reasonably requested to evidence the release of its security interests in the Purchased Assets. If any other person or entity that has filed a financing statement or other documents or agreements evidencing an Encumbrance on the Purchased Assets shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases, and other documents to the Debtors prior to the Closing, then the Debtors and the Buyer shall be and hereby are authorized to execute such termination statements, instruments of satisfaction, releases, and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of Buyer, the Debtors, or any other party to execute, file, or obtain releases, termination statements,

14

assignment consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Asset Purchase Agreement with respect to the sale of the Purchased Assets and the assumption and assignment of the Closing Date Assigned Contracts, all Encumbrances on the Purchased Assets and the Closing Date Assigned Contracts shall be deemed to be divested, terminated, and discharged as of the Closing Date.

13. This Sale Order shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. Each and every federal, state, and local governmental agency or department or office is hereby authorized to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the Asset Purchase Agreement.

14. The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code to (i) sell, assume, assign, and transfer to Buyer the Closing Date Assigned Contracts pursuant to the provisions of sections 363 and 365 of the Bankruptcy Code, free and clear of any and all Claims, Interests, and Encumbrances, and (ii) execute and deliver to Buyer such assignment documents as may be necessary to sell, assign, and transfer the Closing Date Assigned Contracts.

15. On or before the Closing and as provided in the Asset Purchase Agreement, the amounts due, if any, on the Closing Date Assigned Contracts necessary to cure any existing default arising before, on, or after the Petition Date under the Closing Date Assigned Contracts

15

shall have been paid or such other action as will ensure the prompt cure of any such existing default shall have been taken. Other than payment of such amounts, if any, no other action needs to be taken with respect to any of the Closing Date Assigned Contracts in order for the Debtors to assume the Closing Date Assigned Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code.

16. The Closing Date Assigned Contracts shall, upon assumption and assignment to Buyer, be deemed to be valid and binding and in full force and effect and enforceable by Buyer in accordance with their respective terms. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved, from the date of its assignment, from any further liability with respect to the Closing Date Assigned Contracts. Buyer shall not, as a result of such assignment, assume any liability under the Closing Date Assigned Contracts for events occurring prior thereto.

17. The assumption and assignment of the Closing Date Assigned Contracts is conditioned upon the Debtors closing under the Asset Purchase Agreement.

18. The Debtors are hereby authorized, empowered, and directed, and, upon entry of the Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Asset Purchase Agreement and any transaction contemplated thereby. The Debtors shall cooperate with and take all actions reasonably requested by Buyer to effectuate the Asset Purchase Agreement and any transaction contemplated thereby.

19. All of the transactions and actions contemplated by this Order are properly authorized under sections 105, 363 and 365 of the Bankruptcy Code.

20. The consideration provided by Buyer for the Purchased Assets (including the Closing Date Assigned Contracts) under the Asset Purchase Agreement is fair and reasonable, and the result of open and competitive bidding, and may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

21. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and any agreements executed in connection therewith in all respects, including but not limited to, retaining jurisdiction (a) to compel delivery of the Purchased Assets (including the Closing Date Assigned Contracts) to Buyer; (b) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein; (c) to protect the Buyer, or the Purchased Assets, from and against any Encumbrances; and (d) to interpret, implement, and enforce the provisions of this Order.

22. The transactions contemplated by the Asset Purchase Agreement are undertaken by Buyer, in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good-faith purchaser, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

23. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their affiliates their successors and assigns, the Debtors' creditors, all persons or entities holding an interest in the Debtors, including, without limitation, any person or entity purporting to hold Claims, Interests, or Encumbrances against all or any portion of the Intellectual Property, and any

17

#11928945 v1
11928945_1

affected third parties, including all non-debtor parties to the Closing Date Assigned Contracts, notwithstanding conversion or dismissal of the Debtors' bankruptcy cases or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding and not be subject to rejection or avoidance.

24. Nothing in this Order is intended to or shall be deemed to modify the terms of the Asset Purchase Agreement, except as expressly provided herein.

25. The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

26. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Debtors and Buyer, and in accordance with the terms of the Asset Purchase Agreement, without further order of the Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the estates of the Debtors. The terms and provisions of this Order shall inure to the benefit of and shall be fully enforceable by the Buyer's successors and assigns.

27. The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order. The Debtors irrevocably waive any right to seek any modification of this Order without the prior written consent of Buyer, and no such consent shall be implied by any other action, inaction, or acquiescence by Buyer.

28. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten days are hereby waived and this Order shall be effective, and the parties may consummate the transactions contemplated by the Asset Purchase Agreement, immediately upon entry.

29. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an order confirming any plan of reorganization or liquidation of any of the Debtors or converting any of the Debtors' cases from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

30. If the sale to the Buyer pursuant to the Asset Purchase Agreement fails to close for any reason, the Debtors are authorized to sell the Purchased Assets to the Backup Buyer for $5,101,000 in cash, with the Purchased Assets to exclude two Mazak machines, on the terms set forth in the Backup Asset Purchase Agreement and on the record at the auction. If a closing occurs with the Backup Buyer, the provisions of this Order with respect to the Buyer shall be deemed to apply to the Backup Buyer, and the defined term "Asset Purchase Agreement" shall be deemed to refer to the Backup Asset Purchase Agreement.

31. This Court shall retain jurisdiction over the parties to the Asset Purchase Agreement and the Closing Date Assigned Contracts with respect to any matters related to or arising under the Asset Purchase Agreement or under this Order.

Dated: Jan. 7, 2010
Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

#11928945 v1
11928945_1