# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------------x
:
In re                             :

HOLLEY PERFORMANCE    :
PRODUCTS INC., *et al.*,[1]     :

               Debtors.   :
:
-----------------------------------------------------------------x

|  |  |
|---|---|
| : | **Chapter 11** |
| : | **Case No. 09 – 13333 (PJW)** |
| : | **(Jointly Administered)** |

## DEBTORS' AMENDED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899
Attn: David B. Stratton
Attn: Evelyn Meltzer
Attn: John Henry Schanne II

Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110
Attn: James M. Wilton
Attn: James A. Wright III
Attn: Jonathan B. Lackow

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

Dated: April 13, 2010

---

[1]      The Debtors are the following entities:  Holley Performance Products Inc., a Delaware corporation (EIN XX-XXX1482); Holley Performance Products Holdings, Inc., a Delaware corporation (EIN XX-XXX3923); Nitrous Oxide Systems, Inc., a Delaware Corporation (EIN XX-XXX0663); Weiand Automotive Industries, Inc., a Delaware Corporation (EIN XX-XXX6699); and Holley Performance Systems, Inc., a Delaware Corporation (EIN XX-XXX8014).  The Debtors' address is 1801 Russellville Road, Bowling Green, Kentucky 42101.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ....................................................................1

Section 1.1.    *Defined Terms.* ..................................................1

Section 1.2.    *Rules of Interpretation and Computation of Time.*..............12

ARTICLE II UNCLASSIFIED CLAIMS ...............................................13

Section 2.1.    *Administrative Claims.* ........................................13

Section 2.2.    *Priority Tax Claims.* ..........................................13

Section 2.3.    *Professional Fees.* ............................................13

Section 2.4.    *Indenture Trustee Fees and Expenses.* .........................14

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................15

Section 3.1.    *Classification.* ...............................................15

Section 3.2.    *Treatment and Voting Rights of Claims and Equity Interests.*...............................................................15

Section 3.3.    *Cram Down.* ....................................................18

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN..............................18

Section 4.1.    *Compromise of Controversies.* ..................................18

Section 4.2.    *Guarantees.* ...................................................19

Section 4.3.    *Vesting of Assets.* ............................................19

Section 4.4.    *Continued Corporate Existence.* ................................19

Section 4.5.    *Cancellation of Notes, Instruments, and Equity Interests.* .....19

Section 4.6.    *Cancellation of Liens.* ........................................20

Section 4.7.    *New Constituent Documents.* ....................................20

Section 4.8.    *New Officers and New Management Agreements.* ..................20

Section 4.9.    *Directors of the Reorganized Debtors.* .........................20

Section 4.10.   *Corporate Action.* .............................................21

Section 4.11.   *Sources of Cash for Plan Distribution.* ........................21

Section 4.12.   *Restructuring Transactions.* ...................................21

Section 4.13.   *Distributions to Holdings Subsidiaries Equity Interests.* ......22

Section 4.14.   *Intercompany Claims.* ..........................................22

Section 4.15.   *Direction Letters; Stockholders Agreement.* ...................23

Section 4.16.  *Establishment of Administrative Bar Date.* ..........................23

Section 4.17.  *Continuation of Pension Plan.* ...................................23

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES .........................................................24

Section 5.1.  *Assumption of Executory Contracts and Unexpired
Leases.* ..........................................................24

Section 5.2.  *Claims Based on Rejection of Executory Contracts or
Unexpired Leases.* ...............................................24

Section 5.3.  *Indemnification of Directors, Officers, and Employees.* .......................25

Section 5.4.  *Insurance Policies* .............................................25

Section 5.5.  *Compensation and Benefit Programs and Prepetition
Management Agreements.* ........................................25

Section 5.6.  *Termination of Prepetition Equity Agreements.* ...................26

Section 5.7.  *Modifications, Amendments, Supplements, Restatements,
or Other Agreements.* ...........................................26

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ...........................................26

Section 6.1.  *Date of Distributions.* ..........................................26

Section 6.2.  *Disbursing Agent.* .............................................26

Section 6.3.  *Delivery of Distributions and Undeliverable or
Unclaimed Distributions.* .......................................27

Section 6.4.  *Setoff and Recoupment.* ........................................28

Section 6.5.  *Surrender of Cancelled Notes, Instruments, or Securities.* ..................28

Section 6.6.  *Lost, Stolen, Mutilated, or Destroyed Notes.* .......................29

Section 6.7.  *Fractional and Minimum Distributions.* .............................29

Section 6.8.  *Manner of Payment Under Plan of Reorganization.* ...........................29

Section 6.9.  *Withholding and Reporting Requirements.* ..........................29

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...........................30

Section 7.1.  *Prosecution of Objections to Claims.* .....................................30

Section 7.2.  *Estimation of Claims.* ..........................................30

Section 7.3.  *Payments and Distributions on Disputed Claims.* ...............................30

Section 7.4.  *Debtors' Rights and Defenses Preserved.* ...........................31

Section 7.5.  *No Distributions Pending Allowance.* ...................................31

ii

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE ........................................................................31

Section 8.1.  *Conditions Precedent to Confirmation.* ..................................31

Section 8.2.  *Conditions Precedent to the Effective Date* ...........................31

Section 8.3.  *Waiver of Conditions.* ...........................................................32

Section 8.4.  *Modification of Plan.* .............................................................32

Section 8.5.  *Effect of Withdrawal or Revocation.* .....................................32

Section 8.6.  *Reservation of Rights.* ...........................................................32

Section 8.7.  *Substantial Consummation of Plan.* .......................................33

ARTICLE IX EFFECT OF PLAN CONFIRMATION .................................................33

Section 9.1.  *Binding Effect.* ......................................................................33

Section 9.2.  *Discharge of Claims.* .............................................................33

Section 9.3.  ***Releases.*** .................................................................................33

Section 9.4.  ***Exculpation and Limitation of Liability.*** ...............................34

Section 9.5.  ***Injunction.*** .............................................................................34

Section 9.6.  *Claims Related to Pension Plan* .............................................35

Section 9.7.  *Term of Bankruptcy Injunction or Stays* ...............................35

Section 9.8.  *Termination of Subordination Rights and Settlement of Related Claims.* ...............................................................35

Section 9.9.  *Preservation of Rights of Action* ...........................................36

ARTICLE X RETENTION OF JURISDICTION .......................................................36

ARTICLE XI MISCELLANEOUS PROVISIONS.......................................................38

Section 11.1.  *Payment of Statutory Fees.* ....................................................38

Section 11.2.  *Section 1145 Exemption.* .......................................................38

Section 11.3.  *Governing Law.* .....................................................................38

Section 11.4.  *Severability.* ...........................................................................38

Section 11.5.  *Inconsistency.* .........................................................................39

Section 11.6.  *Filing of Additional Documents.* ...........................................39

Section 11.7.  *Service of Documents.* ...........................................................39

Section 11.8.  *Section 1125(e) of the Bankruptcy Code.* ..............................39

Section 11.9.  *Exemption from Certain Transfer Taxes.* ...............................40

# TABLE OF CONTENTS

(continued)

Section 11.10.  *Tax Reporting and Compliance*..........................................................40

Section 11.11.  *Schedules and Exhibits.*........................................................40

Section 11.12.  *No Prejudice.*.........................................................41

Section 11.13.  *Allocation of Payments.*.......................................................41

Section 11.14.  *Dissolution of Statutory Committees.*....................................................41

24440278_4.DOC

# DEBTORS' AMENDED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Holley Performance Products Inc., Holley Performance Products Holdings, Inc., Nitrous Oxide Systems, Inc., Weiand Automotive Industries, Inc., and Holley Performance Systems, Inc., as debtors and debtors in possession in the above-captioned cases, hereby respectfully propose the following amended plan of reorganization under chapter 11 of the Bankruptcy Code.

The only Entities entitled to vote on the Plan are the Holders of Allowed Secured Note Claims. Prior to voting to accept or reject the Plan, such Holders are encouraged to read the Plan, the accompanying Disclosure Statement, and their respective exhibits and schedules, in their entirety. No materials other than the Plan, the Disclosure Statement, and their respective exhibits and schedules have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

Section 1.1.    *Defined Terms*.

The following terms shall have the meanings provided below when used in capitalized form in the Plan:

"***Administrative 503(b)(9) Claims***" means all Claims against any Debtor under section 503(b)(9) of the Bankruptcy Code, which provides priority status to claims for the value of goods received by the Debtors within twenty (20) days before the Petition Date in which the goods have been sold to a Debtor in the ordinary course of such Debtor's business.

"***Administrative Bar Date***" means the date that is thirty (30) days after the date that notice of the Effective Date is entered on the docket for the Chapter 11 Cases.

"***Administrative Claims***" means all Claims against any Debtor constituting a cost or expense of administration (incurred after the Petition Date and prior to the Effective Date) described in sections 330, 331, or 503(b) and entitled to priority under section 507(a)(2) or 507(b) of the Bankruptcy Code (but excluding Intercompany Claims), including, without limitation, (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases in connection with the conduct of their businesses; (c) any administrative claims allowed by Final Order of the Bankruptcy Court in connection with the assumption of executory contracts or otherwise; and (d) any compensation for professional services rendered and reimbursement of expenses incurred. Any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code shall be excluded from the definition of Administrative Claims and paid in accordance with Section 11.1.

"***Administrative Claim Request***" has the meaning given to such term in Section 4.16.

"***Allowed***" means, with respect to any Claim: (a) any Claim against any Debtor which remains unpaid and which has been listed by such Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any Claim for which a proof of claim has been timely filed or deemed timely filed pursuant to a Final Order of the Bankruptcy Court and as to which (x) no objection to allowance has been interposed by the Claims Objection Deadline or such other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, or (y) any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; (c) any Claim that is allowed pursuant to the terms of an agreement by and among the Holder of such Claim and the Debtors (or the Reorganized Debtors, as the case may be); or (d) any Claim that is allowed by Final Order or under the terms of the Plan.

"***Assets***" means, with respect to any Debtor, all of such Debtor's right, title, and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

"***Avoidance Actions***" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code.

"***Ballot***" means the ballot for voting to accept or reject the Plan prepared and distributed by the Debtors to all holders of Impaired claims entitled to vote on this Plan.

"***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Cases.

"***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

"***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Cases.

"***Bar Date***" means a date established by a Final Order of the Bankruptcy Court by which certain Claims must be filed to be entitled to vote on and receive a distribution under a chapter 11 plan in the Chapter 11 Cases, including, without limitation, the Bar Dates established pursuant to the Bar Date Order.

"***Bar Date Order***" means the Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner of Notice Thereof, and (C) Authorizing Payment of Related Publication Expenses, dated December 2, 2009 [Dkt. No. 195].

"***Business Day***" means any day, other than a Saturday, Sunday, or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

"***Cash***" means legal tender of the United States of America.

"***Causes of Action***" means all actions, causes of action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, and trespasses of, or belonging to, the Estates, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity, or otherwise.

"***Chapter 11 Cases***" means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

"***Chapter 11 Parties***" means, collectively, (a) all Persons engaged or retained by the Debtors in connection with the Chapter 11 Cases (including in connection with the preparation of, and analyses relating to, the Disclosure Statement, the Plan, and the Exit Facility Documents), (b) the Majority Secured Noteholders, (c) the Prepetition Agent, (d) the Prepetition Lenders, (e) the Exit Facility Agents, (f) the Exit Facility Lenders, (g) the Indenture Trustee, (h) all Persons engaged or retained by the parties listed in (b) through (g) of this definition in connection with the Chapter 11 Cases (including in connection with the preparation of, and analyses relating to, the Disclosure Statement, the Plan, and the Exit Facility Documents), and (i) any and all managers, directors, shareholders, partners, representatives, employees, attorneys, advisors, and agents of any of the foregoing; *provided*, *however*, that each Majority Secured Noteholder (other than the Second Lien Exit Facility Lenders) shall be included in the definition of Chapter 11 Parties only to the extent that such Entity, to the extent entitled to vote on the Plan in any capacity, votes in favor of the Plan and does not affirmatively elect in its Ballot to decline to grant the releases set forth in Section 9.3(b).

"***Claim***" means a claim as defined in section 101(5), as supplemented by section 102(2) of the Bankruptcy Code, against any Debtor, whether or not asserted.

"***Claims Objection Deadline***" means 120 days after the Effective Date.

"***Class***" means a class of Claims or Equity Interests as set forth in ARTICLE III.

"***Confirmation Date***" means the date upon which the Confirmation Order is entered on the docket for the Chapter 11 Cases.

"***Confirmation Hearing***" means the hearing(s) to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code.

"***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

"**_Covered Persons_**" means all directors, officers, and other employees of the Debtors, as of the Petition Date, other than such directors, officers, and other employees who are expelled or terminated for cause between the Petition Date and the Effective Date.

"**_Debtors_**" means, collectively, Holley Performance Products Inc., Holley Performance Products Holdings, Inc., Nitrous Oxide Systems, Inc., Weiand Automotive Industries, Inc., and Holley Performance Systems, Inc., as debtors and debtors in possession in the Chapter 11 Cases.

"**_Disallowed_**" means, with respect to any Claim, (a) any Claim that has been disallowed or expunged by a Final Order; (b) any Claim against any Debtor which has been listed by such Debtor in the Schedules in the amount of "$0" or as unliquidated in amount, disputed, or contingent and for which a Bar Date has been established but no proof of claim has been timely filed or deemed timely filed pursuant to a Final Order of the Bankruptcy Court; or (c) any Claim that is not listed on the Schedules for the subject Debtor and for which a Bar Date has been established but no proof of claim has been timely filed or deemed timely filed pursuant to a Final Order of the Bankruptcy Court.

"**_Disbursing Agent_**" means the Debtors or the Reorganized Debtors, or any Person designated by the Debtors or the Reorganized Debtors, in the capacity as disbursing agent under the Plan.

"**_Disclosure Statement_**" means the disclosure statement relating to the Plan (including any exhibits and schedules thereto), as such disclosure statement may be amended, supplemented, or modified from time to time.

"**_Disputed_**" means, with respect to any Claim, all or the portion of any Claim against any Debtor that is neither Allowed nor Disallowed, including any Claim as to which the Debtors or the Reorganized Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or that otherwise is disputed by the Debtors or the Reorganized Debtors in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

"**_DTC_**" means The Depository Trust Company.

"**_Effective Date_**" means the Business Day on which all conditions specified in ARTICLE VIII have been satisfied or, if capable of being waived, have been waived in accordance with Section 8.3.

"**_Entity_**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"**_Equity Interests_**" means all outstanding ownership interests in any of the Debtors, including any interest evidenced by common or preferred stock, membership interest, option, or other right to purchase or otherwise receive any ownership interest in any of the Debtors, or any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

"**_ERISA_**" means the Employee Retirement Income Security Act of 1974, as amended.

4

"***Estates***" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"***Existing Director***" means any individual serving, as of the Petition Date (or at any subsequent date through the Effective Date), as a director of any of the Debtors.

"***Existing Employee***" means any individual employed by any of the Debtors as of the Petition Date (or at any subsequent date through the Effective Date) who is not an Existing Officer or Existing Director.

"***Existing Officer***" means any individual serving, as of January 1, 2009 (or at any subsequent date through the Effective Date), as an officer of any of the Debtors.

"***Existing Personnel***" means, collectively, the Existing Directors, the Existing Officers, and the Existing Employees.

"***Exit Commitment Letters***" means the First Lien Exit Commitment Letter and the Second Lien Exit Commitment Letter.

"***Exit Facilities***" means the First Lien Exit Facility and the Second Lien Exit Facility.

"***Exit Facility Agents***" means the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent.

"***Exit Facility Documents***" means the agreements, notes, certificates, documents, and instruments, and all exhibits, schedules, and annexes thereto entered into in connection with the Exit Facilities, each of which shall be satisfactory, in form and substance, to the Majority Secured Noteholders.  Forms of the credit agreements for the Exit Facilities will be set forth in the Plan Supplement.

"***Exit Facility Lenders***" means the First Lien Exit Facility Lenders and the Second Lien Exit Facility Lenders.

"***File***", "***Filed***", or "***Filing***" means file, filed or filing with the Bankruptcy Court (or agent thereof) in connection with the Chapter 11 Cases.

"***Final Order***" means an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) which has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay, or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay, or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay, or rehearing has been Filed and (i) such appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal further or seek certiorari, further review, reargument, stay, or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided*, *however*, that no order or

judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be Filed with respect to such order or judgment.

"*First Lien Exit Commitment Letter*" means the commitment letter attached as <u>Exhibit A</u> to the Disclosure Statement, as such commitment letter may be amended, supplemented, or modified from time to time in accordance with the terms thereof and in a manner acceptable to the Majority Secured Noteholders, pursuant to which the First Lien Exit Facility Lenders have agreed to provide the First Lien Exit Facility subject to the terms and conditions thereof.

"*First Lien Exit Facility*" means the first lien credit facility for $17,800,000 (as adjusted pursuant to the First Lien Exit Commitment Letter) to be provided to the Reorganized Holdings Subsidiaries pursuant to the terms and conditions of the First Lien Exit Commitment Letter.

"*First Lien Exit Facility Agent*" means Wells Fargo Capital Finance, Inc. (formerly known as Wells Fargo Foothill, Inc.), as administrative agent under the First Lien Exit Facility, or any successor administrative agent thereunder.

"*First Lien Exit Facility Lenders*" means the lenders under the First Lien Exit Facility.

"*General Bar Date*" means February 1, 2010, at 5:00 p.m. (prevailing Eastern Time).

"*General Unsecured Claims*" means all Claims that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, Secured Credit Agreement Claims, Secured Note Claims, or Subordinated Securities Claims.

"*Holder*" means the beneficial holder of any Claim or Equity Interest.

"*Holdings*" means Holley Performance Products Holdings, Inc., a Delaware corporation and a debtor and debtor in possession in the Chapter 11 Cases.

"*Holdings Equity Interests*" means all Equity Interests in Holdings.

"*Holdings Subsidiaries*" means Holley Performance Products Inc., Holley Performance Systems, Inc., Nitrous Oxide Systems, Inc., and Weiand Automotive Industries, Inc., as debtors and debtors in possession in the Chapter 11 Cases.

"*Holdings Subsidiaries Equity Interests*" means all Equity Interests in the Holdings Subsidiaries.

"*HPPI*" means Holley Performance Products Inc., a Delaware corporation and a debtor and debtor in possession in the Chapter 11 Cases.

"*Impaired*" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"***Indenture***" means the Indenture, dated as of March 28, 2008, by and among HPPI, as issuer, certain Holdings Subsidiaries, as guarantors, and the Indenture Trustee.

"***Indenture Trustee***" means U.S. Bank National Association, as indenture trustee under the Indenture, or any successor indenture trustee thereunder.

"***Intercompany Claims***" means all Claims held by any Debtor against any other Debtor.

"***Lien***" means a lien as defined in section 101(37) of the Bankruptcy Code on or against any of the Debtors' property or the Estates.

"***Majority Secured Noteholders***" means certain unaffiliated beneficial holders of Secured Notes represented by AIG Global Investment Corp., as investment adviser and/or subadviser for various funds and/or accounts, Bond Street Capital Inc., and Ore Hill Partners LLC, as investment adviser and/or subadviser for various funds and/or accounts, plus any holders added to such representation or removed therefrom from time to time upon written notice to the Debtors.

"***Majority Secured Noteholders Professionals***" means, collectively, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Young Conaway Stargatt and Taylor LLP as legal advisors to the Majority Secured Noteholders.

"***New Constituent Documents***" means (a) with respect to Reorganized Holdings, the Reorganized Holdings Constituent Documents and (b) with respect to any other Reorganized Debtor, the certificate of incorporation, formation, or registration (including, if applicable, certificate of name change), articles of incorporation or association, memorandum of association, memorandum of continuance, charter, by-laws, or one or more similar agreements, instruments, or documents constituting the organization or formation of such Reorganized Debtor, as amended and restated as of the Effective Date, in each case (i) amended and restated to, among other things, (x) prohibit the issuance of non-voting equity securities by such Reorganized Debtor to the extent required under section 1123(a)(6) of the Bankruptcy Code and (y) otherwise give effect to the provisions of the Plan, and (ii) in form and substance satisfactory to the Majority Secured Noteholders. The New Constituent Documents will be included in the Plan Supplement.

"***New Management Agreements***" means employment agreements by and between each of the New Officers and the Reorganized Debtors, to be entered into on, or as soon as practicable after, the Effective Date, which shall be in form and substance satisfactory to the Majority Secured Noteholders and the respective New Officers. Definitive forms of the New Management Agreements will be included in the Plan Supplement. With respect to New Officers with written employment agreements with the Debtors as of the Petition Date, the Debtors will assume and amend such agreements pursuant to Section 5.5 of the Plan on the Effective Date, which agreements (as amended) shall be the New Management Agreements for the respective New Officers.

"***New Officers***" means the officers of the Reorganized Debtors immediately following the Effective Date, the names of which shall be provided in the Plan Supplement and which shall include Thomas W. Tomlinson as President and Chief Executive Officer.

"***Other Priority Claims***" means all Claims against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that are not Administrative Claims or Priority Tax Claims.

"***Other Secured Claims***" means all Secured Claims against any Debtor that are not Secured Credit Agreement Claims or Secured Note Claims.

"***PBGC***" means the Pension Benefit Guaranty Corporation.

"***Pension Plan***" means the Debtors' defined benefit pension plan, the Pension Plan for Employees of Holley Performance Products Inc.

"***Person***" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"***Petition Date***" means September 28, 2009, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

"***Plan***" means this plan of reorganization under chapter 11 of the Bankruptcy Code, as may be amended, supplemented, or modified from time to time in accordance with the terms hereof and in accordance with the terms of the Bankruptcy Code and the Bankruptcy Rules.

"***Plan Documents***" means the agreements, documents, and instruments to be entered into as of the Effective Date as contemplated by, and in furtherance of, the Plan.

"***Plan Supplement***" means the compilation of documents and exhibits Filed not later than ten (10) calendar days prior to the first date on which the Confirmation Hearing is scheduled to be held, as such documents and exhibits may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of this Plan.

"***Prepetition Agent***" means Wells Fargo Capital Finance, Inc. (formerly known as Wells Fargo Foothill, Inc.), as administrative agent under the Secured Credit Agreement, or any successor administrative agent thereunder.

"***Prepetition Employee Severance Plan***" means any prepetition employee severance plan.

"***Prepetition Equity Agreements***" means, collectively, the stockholders agreement, dated as of March 28, 2008, by and among Holdings and certain other parties thereto, as amended from time to time.

"***Prepetition Lenders***" means the lenders under the Secured Credit Agreement as of December 31, 2009 and their successors and assigns.

"***Prepetition Long Term Incentive Plan***" means the Debtors' Long Term Incentive Compensation Plan, adopted effective as of March 28, 2008.

"***Priority Tax Claims***" means all Claims against any Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"***Professionals***" means (a) all professionals employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise and (b) all professionals or other entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

"***Professional Fee Claims***" means all Administrative Expense Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals (to the extent allowed under sections 328, 330, 331, 363, or 503 of the Bankruptcy Code) through the Effective Date

"***Professional Fee Order***" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, entered by the Bankruptcy Court on October 27, 2009.

"***Pro-Rata Share***" means, with respect to distributions on account of any Allowed Secured Note Claim, a distribution equal in amount to the ratio (expressed as a percentage) that (a) the amount of such Allowed Secured Note Claim bears to (b) the aggregate amount of all Secured Note Claims, other than Disallowed Claims, minus the aggregate amount of Allowed Secured Note Claims receiving a Cash distribution under the Plan in lieu of Secured Note Shares.

"***Record Holder***" means a holder of record with the Depository Trust Company of Secured Notes on the applicable record date.

"***Releasees***" means, collectively, (a) the Existing Personnel and (b) the Chapter 11 Parties.

"***Releasors***" means, collectively, (a) all Holders of Impaired Claims entitled to vote that have not affirmatively elected in their Ballot to decline to grant the releases set forth in Section 9.3(b) and (b) the Second Lien Exit Facility Lenders.

"***Reorganized Debtor***" means any Debtor (other than any Debtor that is dissolved prior to the Effective Date pursuant to Section 4.12) and any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

"***Reorganized Holdings***" means Holdings and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

"***Reorganized Holdings Board of Directors***" means the board of directors of Reorganized Holdings.

"***Reorganized Holdings By-Laws***" means the amended and restated by-laws of Reorganized Holdings, in substantially the form set forth in the Plan Supplement, which shall (a) be satisfactory, in form and substance, to the Majority Secured Noteholders, and (b) become effective on the Effective Date.

"***Reorganized Holdings Certificate of Incorporation***" means the amended and restated certificate of incorporation of Reorganized Holdings, a copy of which shall be included in the Plan Supplement, which shall be (a) filed with the Secretary of State of the State of Delaware on or about the Effective Date, and (b) satisfactory, in form and substance, to the Majority Secured Noteholders.

"***Reorganized Holdings Common Stock***" means the common stock of Reorganized Holdings, par value $0.0001 per share, 10 million shares of which shall be authorized pursuant to the Reorganized Holdings Certificate of Incorporation, which common stock shall be the sole class of voting stock of Reorganized Holdings.

"***Reorganized Holdings Constituent Documents***" means, collectively, the Reorganized Holdings By-Laws and the Reorganized Holdings Certificate of Incorporation.

"***Reorganized Holdings Subsidiaries***" means the Holdings Subsidiaries and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

"***Reorganized Holdings Subsidiaries' Boards of Directors***" means, collectively, the boards of directors of each of the Reorganized Debtors, other than the Reorganized Holdings Board of Directors.

"***Restructuring Transactions***" has the meaning given to such term in Section 4.12.

"***Schedules***" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as amended, modified, or supplemented from time to time.

"***Second Lien Exit Commitment Letter***" means the commitment letter attached as Exhibit B to the Disclosure Statement, as such commitment letter may be amended, supplemented, or modified from time to time in accordance with the terms thereof and in a manner acceptable to the Majority Secured Noteholders, pursuant to which the Second Lien Exit Facility Lenders have agreed to provide the Second Lien Exit Facility subject to the terms and conditions thereof.

"***Second Lien Exit Facility***" means the $11,170,500 second lien credit facility to be provided to the Reorganized Holdings Subsidiaries pursuant to the terms and conditions of the Second Lien Exit Commitment Letter.

"***Second Lien Exit Facility Agent***" means the administrative agent under the Second Lien Exit Facility, or any successor administrative agent thereunder.

"***Second Lien Exit Facility Lenders***" means the lenders under the Second Lien Exit Facility.

"***Secured Claims***" means all Claims against any Debtor that are secured by a Lien on, or security interest in, property of such Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Holder's interest in

such Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"*Secured Credit Agreement*" means the credit agreement, dated as of March 28, 2008, by and among HPPI and certain Holdings Subsidiaries, as borrowers, Holdings, as guarantor, the Prepetition Agent, and the other parties thereto, as amended, modified, or supplemented from time to time, together with all other agreements entered into and documents delivered in connection therewith.

"*Secured Credit Agreement Amount*" means $21,360,000 in principal amount owed as of the Petition Date in connection with the Secured Credit Agreement, less postpetition amortization payments made, plus any interest or other charges accrued and unpaid under the Secured Credit Agreement Documents, including, but not limited to, all professional fees of the Prepetition Agent and Prepetition Lenders payable thereunder, up to, but not including, the Effective Date.

"*Secured Credit Agreement Claims*" means all Claims against any Debtor arising out of, or in connection with, the Secured Credit Agreement Documents.

"*Secured Credit Agreement Documents*" means the agreements, notes, certificates, documents, and instruments, and all exhibits, schedules, and annexes thereto entered into prior to the Petition Date in connection with (and including) the Secured Credit Agreement.

"*Secured Notes*" means the 12½% Senior Second Lien Secured Notes due March 28, 2013 issued by HPPI under the Indenture.

"*Secured Note Amount*" means the sum of (a) the Secured Note Principal Amount, and (b) the Secured Note Prepetition Interest Amount.

"*Secured Note Claims*" means all Claims against any Debtor related to, arising out of, or in connection with, the Secured Notes and the Indenture, other than Claims payable pursuant to Section 2.4.

"*Secured Note Prepetition Interest Amount*" means $7,499,999.94, the interest accrued as of the day immediately prior to the Petition Date in connection with the Secured Notes and the Indenture.

"*Secured Note Principal Amount*" means $50,000,000 in principal amount owed in connection with the Secured Notes and the Indenture.

"*Secured Note Shares*" means 100% of the shares of Reorganized Holdings Common Stock to be issued by Reorganized Holdings on the Effective Date, except for (a) shares of Reorganized Holdings Common Stock reserved with respect to warrants issued under the Second Lien Exit Facility and (b) subject to the consent of the Majority Secured Noteholders, up to 11% of the shares of Reorganized Holdings Common Stock to be issued or reserved for issuance under the New Management Agreements and/or a new management incentive plan established on or after the Effective Date.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Share Value**" means, for the Holders of less than $3,500,000 in principal amount of Allowed Secured Note Claims, an amount equal to $525 per $1000 of the principal amount of such Allowed Secured Claims that may be distributed to such Holders pursuant to section 3.2(b) in lieu of Secured Note Shares.

"**Specified Employee Claims**" means claims on account of the Prepetition Long Term Incentive Plan or a Prepetition Employee Severance Plan.

"**Statutory Committees**" means all official committees appointed by the Office of the United States Trustee pursuant to section 1102 of the Bankruptcy Code, if any.

"**Stockholders Agreement**" means the stockholders agreement which shall govern the Reorganized Holdings Common Stock, which shall be in form and substance satisfactory to the Majority Secured Noteholders. A definitive form of the Stockholders Agreement will be included in the Plan Supplement.

"**Subordinated Securities Claims**" means all Claims against any Debtor that are subordinated, or subject to subordination, pursuant to section 510(b) or 510(c) of the Bankruptcy Code, including (a) any Claim arising from the rescission of a purchase or sale of Secured Notes or Equity Interests in any Debtor, (b) any Claim for damages arising from the purchase or sale of Secured Notes or Equity Interests in any Debtor, (c) any Claim arising from the Prepetition Equity Agreements, and (d) any Claim for reimbursement, contribution, or indemnification on account of any such Claims.

"**Unimpaired**" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

Section 1.2. *Rules of Interpretation and Computation of Time.*

(a) For purposes of the Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document substantially shall be in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (viii) any term used in capitalized form in the Plan that is not defined in the Plan but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in

the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (ix) with respect to any consent required hereunder from any of the Majority Secured Noteholders, the Debtors shall be permitted to rely solely on the written representation (including by electronic mail) of the legal counsel to the Majority Secured Noteholders as to whether such consent has been obtained.

(b)       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## UNCLASSIFIED CLAIMS

Section 2.1.    *Administrative Claims.*

Each Holder of an Allowed Administrative Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Administrative Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Administrative Claim becomes Allowed, (c) the date on which such Administrative Claim becomes due and payable, and (d) such other date as mutually may be agreed to by such Holder and the Debtors.  Notwithstanding the foregoing, any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

Section 2.2.    *Priority Tax Claims.*

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Priority Tax Claim becomes Allowed, (c) the date on which such Priority Tax Claim becomes due and payable, and (d) such other date as mutually may be agreed to by and among such Holder and the Debtors; *provided*, *however*, that the Debtors shall be authorized, at their option, and in lieu of payment in full in Cash of an Allowed Priority Tax Claim as provided in clauses (a) through (d) hereof, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

Section 2.3.    *Professional Fees.*

(a)       *Final Fee Applications*

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtors no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The Reorganized Debtors shall make all distributions on account of Allowed Claims for

13

Professional compensation and reimbursement of expenses as soon as reasonably practicable after such Claims become Allowed.

(b) *Payment of Interim Amounts*

Professionals shall be paid pursuant to the "Monthly Statement" process set forth in the Professional Fee Order with respect to all calendar months ending prior to the Effective Date.

(c) *Post-Effective Date Fees and Expenses*

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court

(d) *Fees and Expenses of Majority Secured Noteholder Professionals*

Notwithstanding Section 2.3(a), all reasonable fees and expenses of the Majority Secured Noteholder Professionals that are incurred in connection with the Chapter 11 Cases (whether incurred before or after the Petition Date, but no later than the Effective Date) shall be deemed to be Allowed Administrative Claims for purposes hereof.

Section 2.4. *Indenture Trustee Fees and Expenses.*

The Indenture Trustee has provided and will continue to provide necessary services under the Indenture prior to and after the Petition Date. On the Effective Date, the Debtors shall pay all reasonable fees, costs, and expenses incurred by the Indenture Trustee in the performance of its duties (including, but not limited to, the reasonable fees, costs, and expenses incurred by the Indenture Trustee's professionals) prior to the Effective Date; *provided*, that (a) such fees, costs, and expenses are required to be paid under the terms of the Indenture, and (b) any dispute in connection with such fees, costs, and expenses has been resolved by Final Order. The Reorganized Debtors shall pay all reasonable fees, costs, and expenses incurred by the Indenture Trustee after the Effective Date in connection with the distributions required pursuant to ARTICLE VI or the implementation of any provisions of the Plan (including, but not limited to, the reasonable fees, costs, and expenses incurred by the Indenture Trustee's professionals). Any dispute regarding the obligations of the Debtors or the Reorganized Debtors with respect to the payment of the reasonable fees, costs, and expenses of the Indenture Trustee shall be resolved by the Bankruptcy Court. If such a dispute occurs, the Debtors shall pay the undisputed portion of the fees, costs, and expenses of the Indenture Trustee and shall promptly place the disputed portion in escrow in a manner reasonably satisfactory to the Indenture Trustee. Distributions received by the Holders of Allowed Secured Note Claims, pursuant to the Plan, shall not be reduced on account of the payment of the Indenture Trustee's fees, costs, and expenses pursuant to the terms of the Plan.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 3.1.    *Classification.*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest has not been paid or otherwise settled prior to the Effective Date. Intercompany Claims are not classified herein and shall be treated as provided in Section 4.14 of the Plan.

Claims (except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) are classified as follows:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Secured Credit Agreement Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Secured Note Claims | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 5 | General Unsecured Claims | Impaired | No (deemed to reject) |
| Class 6 | Subordinated Securities Claims | Impaired | No (deemed to reject) |
| Class 7 | Holdings Equity Interests | Impaired | No (deemed to reject) |
| Class 8 | Holdings Subsidiaries Equity Interests | Unimpaired | No (deemed to accept) |

Section 3.2.    *Treatment and Voting Rights of Claims and Equity Interests.*

(a)    *Class 1—Secured Credit Agreement Claims.*

(i)    *Treatment*: Each Holder of an Allowed Secured Credit Agreement Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Secured Credit Agreement Claim (except to the extent such Holder agrees to less favorable treatment thereof) either on or prior to the Effective Date.

(ii)    *Allowance*: The Secured Credit Agreement Claims shall be deemed Allowed in an aggregate amount equal to the Secured Credit Agreement Amount.

15

(iii)    *Voting*:  Class 1 is Unimpaired.  Holders of Allowed Secured Credit Agreement Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(b)    *Class 2—Secured Note Claims.*

(i)    *Treatment*:  Each Holder of an Allowed Secured Note Claim shall receive, in full satisfaction and discharge thereof, on, or as soon as practicable after, the Effective Date, its Pro-Rata Share of the Secured Note Shares distributed pursuant to ARTICLE VI of this Plan; *provided*, that, subject to the prior consent of the Majority Secured Noteholders and in the discretion of the Debtors, a Holder of less than $3,500,000 in principal amount of Allowed Secured Note Claims may receive, in lieu of Secured Note Shares, the Share Value of such Secured Note Shares in Cash provided by third parties, in which case such third parties shall receive, on a pro rata basis, the Secured Note Shares such Holder would otherwise have received; *provided*, *further*, that if a Holder of a Secured Note Claim affirmatively elects to receive Secured Note Shares, such Holder shall receive its Pro-Rata Share of Secured Note Shares and will not receive a distribution of Cash.

(ii)    *Allowance*:  The Secured Note Claims shall be deemed Allowed in an aggregate amount equal to the Secured Note Amount.

(iii)    *Voting*:  Class 2 is Impaired.  Holders of Allowed Secured Note Claims are entitled to vote to accept or reject the Plan.

(c)    *Class 3—Other Secured Claims.*

(i)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that such Claim is rendered Unimpaired, except to the extent that such Holder agrees to less favorable treatment.  The failure of the Debtors or any other party in interest (including the Majority Secured Noteholders) to File an objection, prior to the Effective Date, with respect to any Other Secured Claim that is reinstated by the Plan shall be without prejudice to the rights of the Reorganized Debtors or any other party in interest (including the Majority Secured Noteholders) to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable, in accordance with ARTICLE X) when and if such Claim is sought to be enforced.  Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Other Secured Claim shall be paid on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes

Allowed, or (z) such other date as mutually may be agreed to by and among such Holder and the Debtors.

(ii) *Voting*: Class 3 is Unimpaired. Holders of Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(d) *Class 4—Other Priority Claims.*

(i) *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Other Priority Claim (except to the extent such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such Other Priority Claim becomes Allowed, or (z) such other date as mutually may be agreed to by and among such Holder and the Debtors.

(ii) *Voting*: Class 4 is Unimpaired. Holders of Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(e) *Class 5—General Unsecured Claims.*

(i) *Treatment*: No Holder of a General Unsecured Claim shall be entitled to, nor shall it receive or retain, any property or interest in property on account of such General Unsecured Claim. On the Effective Date, all General Unsecured Claims shall be cancelled, extinguished, and discharged on the Effective Date.

(ii) *Voting*: Class 5 is Impaired. Holders of General Unsecured Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(f) *Class 6—Subordinated Securities Claims.*

(i) *Treatment*: No Holder of a Subordinated Securities Claim shall be entitled to, nor shall it receive or retain, any property or interest in property on account of such Subordinated Securities Claim. On the Effective Date, all Subordinated Securities Claims shall be cancelled, extinguished, and discharged.

(ii) *Voting*: Class 6 is Impaired. Holders of Subordinated Securities Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(g)    *Class 7—Holdings Equity Interests.*

    (i)    *Treatment*:  No Holder of Holdings Equity Interests shall be entitled to, nor shall it receive or retain, any property or interest in property on account of such Holdings Equity Interests.  On the Effective Date, all Holdings Equity Interests shall be cancelled, extinguished, and discharged.

    (ii)    *Voting*:  Class 7 is Impaired.  Holders of Holdings Equity Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(h)    *Class 8—Holdings Subsidiaries Equity Interests.*

    (i)    *Treatment*:  Notwithstanding anything in this Plan to the contrary, on the Effective Date, the Holdings Subsidiaries Equity Interests shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such Equity Interests immediately prior to the Effective Date.

    (ii)    *Voting*:  Class 8 is Unimpaired.  Holders of Holdings Subsidiaries Equity Interests are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

Section 3.3.    *Cram Down.*

With respect to any Classes of Claims or Equity Interests that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 4.1.    *Compromise of Controversies.*

With respect to the Claims and Equity Interests that are either entitled to vote or are unimpaired under the Plan (Classes 1, 2, 3, 4, and 8) and the Holders of such Claims and Equity Interests, in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

Section 4.2.    *Guarantees*.

On the Effective Date, all guarantees by any Debtor of the payment, performance, or collection of another Debtor with respect to the Claims specified in Classes 1 and 2 shall be forever discharged, eliminated, cancelled, and of no further force and effect.

Section 4.3.    *Vesting of Assets*.

Except as otherwise provided in the Plan or in any Plan Document, on the Effective Date, title to all Assets of any Debtor shall vest in the respective Reorganized Debtor, free and clear of all Claims, liens, encumbrances, and other interests.

Section 4.4.    *Continued Corporate Existence*.

Except as otherwise provided in Section 4.12, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law and pursuant to the applicable New Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On and after the occurrence of the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses and to use, acquire, or dispose of Assets without supervision or approval by the Bankruptcy Court, free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

Section 4.5.    *Cancellation of Notes, Instruments, and Equity Interests*.

(a)    *Cancellation of Secured Notes*.

Upon the Effective Date each of (a) the Secured Notes, (b) the Indenture, and (c) any other notes, bonds, indentures, certificates, or other instruments or documents evidencing or creating the Secured Notes or the Indenture, shall be cancelled and deemed terminated and satisfied and discharged, and the Holders thereof and the Indenture Trustee shall have no further rights or entitlements in respect thereof against the Debtors, except the rights to receive the distributions, if any, to which the Holders thereof or the Indenture Trustee are entitled under the Plan.

Upon the Effective Date, the Indenture Trustee and its agents shall be released of all claims arising in the Chapter 11 Cases and discharged of all of their obligations associated with (a) the Secured Notes, (b) the Indenture, and (c) any related documents; *provided*, *however*, that the Indenture Trustee shall be obligated to perform its duties and obligations under the Plan.

(b)    *Cancellation of Other Instruments and Equity Interests*.

Upon the Effective Date, each of (a) the Secured Credit Agreement, (b) the Holdings Equity Interests, and (c) any other notes, bonds, indentures, certificates, or other instruments or documents evidencing or creating any Claims or Equity Interests that are Impaired by the Plan, shall be automatically cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and deemed terminated, satisfied, and discharged, and the Holders

19

of Claims with respect thereto shall have no further rights or entitlements in respect thereof against the Debtors, except the rights to receive the distributions, if any, to which the Holders thereof are entitled under the Plan.

Section 4.6.    *Cancellation of Liens*.

Upon the Effective Date, any Lien securing any Secured Claim (other than a Lien with respect to a Claim that is reinstated pursuant to Section 3.2(c)) shall be deemed released, and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).  Notwithstanding anything in this Section 4.6 to the contrary, however, (a) the Liens securing Claims under the Secured Credit Agreement shall not be released (or deemed released) until the distributions provided in this Plan for the Holders of Allowed Secured Credit Agreement Claims have been made to the Prepetition Agent, and (b) the Liens securing Claims under the Indenture shall not be released (or deemed released) until the distributions provided in this Plan for the Holders of Allowed Secured Note Claims have been made in accordance with the Plan.

Section 4.7.    *New Constituent Documents*.

On, or as soon as practicable after, the Effective Date, the Reorganized Debtors shall (a) make any and all filings that may be required in connection with the New Constituent Documents with the appropriate governmental offices and/or agencies and (b) take any and all other actions that may be required to render the New Constituent Documents effective.

Section 4.8.    *New Officers and New Management Agreements*.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each of the New Officers (and, to the extent such Person is an insider, the nature of any compensation for such Person) will be provided in the Plan Supplement.  On the Effective Date, the Reorganized Debtors shall enter into the New Management Agreements with the New Officers.  With respect to New Officers with written employment agreements with the Debtors as of the Petition Date, the Debtors will assume and amend such agreements pursuant to Section 5.5 of the Plan on the Effective Date, which agreements (as amended) shall be the New Management Agreements for the respective New Officers.

Section 4.9.    *Directors of the Reorganized Debtors*.

(a)    *Initial Reorganized Holdings Board of Directors*.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed member of the initial Reorganized Holdings Board of Directors (and, to the extent such Person is an insider, the nature of any compensation for such Person) shall be disclosed in the Plan Supplement.  The initial Reorganized Holdings Board of Directors shall consist of five directors, (i) four of whom shall be designated by the Majority Secured Noteholders, and (ii) one of whom shall be the chief executive officer of Reorganized Holdings.  Each member of the initial Reorganized Holdings

Board of Directors shall assume such position on the day immediately following the Effective Date. Any subsequent Reorganized Holdings Board of Directors shall be elected, classified, and composed in a manner consistent with the Reorganized Holdings New Constituent Documents, the Stockholders Agreement, and applicable non-bankruptcy law.

(b) *Initial Reorganized Holdings Subsidiaries' Boards of Directors*. The proposed members of each of the initial Reorganized Holdings Subsidiaries' Boards of Directors shall be disclosed in the Plan Supplement. The classification and composition of each Reorganized Holdings Subsidiary's Board of Directors shall be consistent with the applicable New Constituent Documents and applicable non-bankruptcy law.

Section 4.10. *Corporate Action*.

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) the adoption of the New Constituent Documents, (b) the selection of the directors and officers for the Reorganized Debtors, (c) the execution of and entry into the New Management Agreements and the Exit Facility Documents, (d) the issuance of the Reorganized Holdings Common Stock, (e) the execution of and entry into the Stockholders Agreement, and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors. Upon the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including (i) the Exit Facility Documents, (ii) the Stockholders Agreement, and (iii) any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated in this Section 4.10 shall be effective notwithstanding any requirements under any applicable non-bankruptcy law.

Section 4.11. *Sources of Cash for Plan Distribution.*

Except as otherwise provided in the Plan or Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Exit Facilities and the Debtors' and the Reorganized Debtors' operations and Cash balances.

Section 4.12. *Restructuring Transactions*.

From the Confirmation Date through the Effective Date, the Debtors shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate restructuring of their businesses, to otherwise simplify the overall corporate structure of the Debtors, or to reincorporate certain of the Debtors under the laws of jurisdictions other than the laws of which such Debtors currently are incorporated, which restructuring may

include one or more mergers, consolidations, dispositions, liquidations, or dissolutions, as may be determined by the Debtors to be necessary or appropriate (collectively, the "***Restructuring Transactions***").

In effecting the Restructuring Transactions, the Debtors shall be permitted to (a) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable entities may agree, (b) execute and deliver appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree, (c) file appropriate certificates or articles of merger, consolidation, or dissolution pursuant to applicable state law, and (d) take all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, dispositions, liquidations, or dissolutions as may be determined by the Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of certain of the Debtors vesting in one or more surviving, resulting, or acquiring corporations. In each case in which the surviving, resulting, or acquiring corporation in any such transaction is a successor to a Debtor, such surviving, resulting, or acquiring corporation will perform the obligations of such Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Debtor, except as provided in any contract, instrument, or other agreement or document effecting a disposition to such surviving, resulting, or acquiring corporation, which may provide that another Debtor will perform such obligations.

Notwithstanding the Restructuring Transactions, each and every Debtor shall remain responsible for the payment of quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until the earlier of the time a particular case is closed, dismissed, or converted.

Section 4.13. *Distributions to Holdings Subsidiaries Equity Interests.*

The treatment specified in Section 3.2(h) for the Holders of Holdings Subsidiaries Equity Interests in Class 8 is and shall be deemed to be a transfer of value from the Holders of Secured Note Claims in Class 2 to which such Holders would be entitled under applicable state law in respect of liens securing the Secured Note Claims.

Section 4.14. *Intercompany Claims*.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, the Intercompany Claims shall be reinstated pursuant to section 1124(2) of the Bankruptcy Code or discharged and satisfied at the option of the Reorganized Debtors by contributions, distributions, or otherwise.

Section 4.15.  *Direction Letters; Stockholders Agreement.*

Following the Confirmation Date, the Debtors may transmit direction letters to the Record Holders for the Holders of Allowed Secured Note Claims as of a date after the Effective Date determined by the Debtors instructing such Record Holders to complete and return to the Debtors a certification containing information necessary to distribute shares of Reorganized Holdings Common Stock and Cash to the Holders of Secured Notes who hold such notes through such Record Holders.

Notwithstanding anything to the contrary in the Plan, all Holders of Claims entitled to receive a distribution of shares of Reorganized Holdings Common Stock shall properly execute and return to the Debtors a copy of the Stockholders Agreement.  The Debtors, in their sole discretion, may (a) withhold distribution of shares of Reorganized Holdings Common Stock to any Holder of Claims who fails to properly execute and return the Stockholders Agreement or (b) distribute such shares to such Holders or to the Record Holders for such Holders. Distributions of Reorganized Holdings Common Stock which are not made pursuant to this Section 4.15 due to the failure of a Holder to properly execute and return the Stockholders Agreement shall be considered undeliverable distributions subject to the provisions of Section 6.3.  As of the Effective Date, whether or not the Stockholders Agreement has been properly executed and returned, Holders of Claims or Record Holders for such Holders receiving Reorganized Holdings Common Stock shall be deemed bound by the Stockholders Agreement.

Section 4.16.  *Establishment of Administrative Bar Date.*

Except as otherwise provided in Section 2.3, each Holder of an Administrative Claim (other than an Administrative 503(b)(9) Claim) shall file with the Bankruptcy Court and serve on counsel to the Debtors, at the addresses set forth in Section 11.7, a request for payment of such Administrative Claim ("***Administrative Claim Request***"), so as to be actually received on or before 5:00 p.m. (prevailing Eastern time) on the Administrative Bar Date.  Notice of the Administrative Bar Date shall be provided by mail and by publication within 5 Business Days of the Confirmation Date or otherwise in accordance with the provisions of the Confirmation Order. Any Holder of an Administrative Claim (other than an Administrative 503(b)(9) Claim) that fails to timely file and serve an Administrative Claim Request by the Administrative Bar Date in accordance with the Plan and the Confirmation Order shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtors, the Estates, or any Entity formed pursuant to this Plan, and such Administrative Claim will be deemed discharged as of the Effective Date in accordance with Section 9.2.  Notwithstanding anything in this Section 4.16 to the contrary, the Bar Date for Administrative 503(b)(9) Claims shall be the Bar Date established by the Bar Date Order and not by this Section 4.16.

Section 4.17.  *Continuation of Pension Plan.*

The Pension Plan will continue through the Debtors' chapter 11 cases and after the Effective Date.  After the Effective Date, Reorganized Holley will be subject to the applicable requirements of ERISA with respect to the Pension Plan, including the requirements, as applicable, to make contributions to the Pension Plan in the amounts necessary to meet the minimum funding standards prescribed by 29 U.S.C. § 1082 and 26 U.S.C. § 412 and to pay

PBGC premiums prescribed by 29 U.S.C. §§ 1306 and 1307. Reorganized Holley's controlled group members also will be liable for those amounts to the extent provided by ERISA. Further, because the Pension Plan is continuing, the Reorganized Debtors will be liable with respect to the Pension Plan to the extent provided by ERISA, including, as applicable, liabilities to the PBGC for the Pension Plan's unfunded benefit liabilities pursuant to 29 U.S.C. § 1362(b), for the Pension Plan's funding deficiencies pursuant to 29 U.S.C. § 1362(c), and for unpaid PBGC premiums pursuant to 29 U.S.C. §§ 1306 and 1307.

# ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 5.1. *Assumption of Executory Contracts and Unexpired Leases*.

(a) All executory contracts and unexpired leases of the Debtors that are not (i) assumed by the Debtors prior to the Effective Date, (ii) subject to a motion seeking such assumption as of the Effective Date, or (iii) identified in the Plan or the Plan Supplement as executory contracts or unexpired leases to be assumed pursuant to the Plan or for which the Debtors expressly reserve the right to seek to assume, shall be deemed to have been rejected by the Debtors on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Bankruptcy Court. The Debtors reserve the right after the Confirmation Date to withdraw any pending motions seeking the assumption of any executory contracts or unexpired leases that have not been approved by Final Order, in which case the subject executory contracts or unexpired leases shall be deemed rejected pursuant to the Plan as of the date of such withdrawal.

(b) Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of such amount in Cash, on the Effective Date, or upon such other terms as the parties to such executory contract or unexpired lease may otherwise agree. If a dispute arises regarding (i) the amount of any cure payments required under section 365(b)(1) of the Bankruptcy Code, (ii) the ability of any Reorganized Debtor or any assignee thereof to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption under section 365 of the Bankruptcy Code, the cure payments required under section 365(b)(1) of the Bankruptcy Code, if any, shall be made following the entry of a Final Order resolving such dispute.

Section 5.2. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*.

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed (a) by the later of the General Bar Date or (b) within thirty (30) days after the date of any deemed rejection or entry of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease for which proof of such Claim is not Filed within such time period shall forever be barred from assertion against the Debtors or the Reorganized Debtors, the Estates, and their property, unless otherwise ordered by the Bankruptcy Court. Any

Allowed Claim arising from the rejection of executory contracts or unexpired leases for which proof of such Claim timely has been Filed shall be, and shall be treated as, an Allowed General Unsecured Claim under the terms hereof, subject to any limitation under section 502(b) of the Bankruptcy Code or otherwise.

Section 5.3.    *Indemnification of Directors, Officers, and Employees*.

Notwithstanding Section 5.1 hereof, any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse, or limit the liability of Covered Persons pursuant to any applicable certificates of incorporation, by-laws, policy of providing employee indemnification, state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date, shall be treated as if they were executory contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected hereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

Section 5.4.    *Insurance Policies*

Notwithstanding Section 5.1 hereof, unless otherwise rejected by the Debtors prior to the Effective Date or subject to a motion seeking such rejection as of the Effective Date, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto shall be deemed to be, and treated, as executory contracts and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code. Nothing contained in this section shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any Entity, including, without limitation, the insurer, under any of the Debtors' insurance policies.

Section 5.5.    *Compensation and Benefit Programs and Prepetition Management Agreements*.

Notwithstanding Section 5.1 hereof, and except as provided with respect to the Pension Plan in Section 4.17 hereof, unless otherwise rejected by the Debtors prior to the Effective Date or subject to a motion seeking such rejection as of the Effective Date, all duly-authorized and validly-existing employment and severance policies and compensation and benefit plans, policies, and programs of the Debtors solely to the extent applicable to any of the Debtors' employees, officers, or directors employed or serving as of the Petition Date (or at any subsequent date through the Effective Date) including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and treated, as executory contracts and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code. Notwithstanding Section 5.1 hereof, with respect to New Officers who have written employment agreements with the Debtors as of the Petition Date, on the Effective Date the Debtors shall assume and amend such employment agreements, and such agreements shall be, as amended, the New Management Agreements for such New Officers. Upon the Effective Date, and conditioned upon the proper execution of such New Officer's New Management Agreement, each New Officer shall be deemed to waive his or her respective Specified Employee Claims on

the Effective Date, and such New Officer shall receive no distribution on account thereof.  Upon the Effective Date, the Prepetition Long Term Incentive Plan shall be cancelled and replaced by a new management incentive plan.

Section 5.6.    *Termination of Prepetition Equity Agreements*.

Upon the Effective Date, each Prepetition Equity Agreement shall be deemed terminated and of no further force and effect, and any Claim in respect thereof shall be treated as a Subordinated Securities Claim hereunder.

Section 5.7.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed or rejected shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts or unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of such executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

# ARTICLE VI

# PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.1.    *Date of Distributions*.

Except as otherwise provided in the Plan, any distribution to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter.  Any payment or act required to be made or done hereunder on a day that is not a Business Day shall be made or done on the next succeeding Business Day.

Section 6.2.    *Disbursing Agent*.

(a)    *General*.  Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity designated by the Reorganized Debtors as the Disbursing Agent.

(b)    *Rights and Powers of Disbursing Agent*.  The Disbursing Agent shall be empowered (i) to effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated by the Plan, (iii) without further order of the Bankruptcy Court, employ or contract with any Entities to assist in or make the distributions required by the Plan, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or

as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(c)     *Prepetition Agent.*  All distributions on account of Secured Credit Agreement Claims shall be made to the Prepetition Agent.  The Prepetition Agent shall hold all distributions for the benefit of the Holders of Allowed Secured Credit Agreement Claims and, as soon as practicable following the Prepetition Agent's compliance with the requirements set forth in Section 6.5 of the Plan, shall deliver such distributions to such Holders in accordance with the provisions of the Secured Credit Agreement.

Section 6.3.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

(a)     *Delivery in General.*

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder, or if no Proof of Claim was filed, in the Schedules.

(b)     *Delivery to Holders of Allowed Secured Credit Agreement Claims.*

The distributions of Cash to be made hereunder to a Holder of an Allowed Secured Credit Agreement Claim shall be made to by the Prepetition Agent in accordance with the provisions of the Secured Credit Agreement.

(c)     *Delivery to Holders of Allowed Secured Note Claims.*

The distributions of Secured Note Shares or Cash to be made hereunder to a Holder of Allowed Secured Note Claims shall be made, as determined by the Debtors in their sole discretion, to the Record Holder for such Holder, to the address of such Holder provided in a response to a properly completed letter of transmittal or on a website established by the Debtors for purposes of effecting such distributions, or by such other means and in accordance with such procedures as determined by the Debtors.  The method used for making distributions will include a process for Holders of less than $3,500,000 in principal amount of Allowed Secured Note Claims to affirmatively elect to receive Second Lien Shares in accordance with Section 3.2(b)(i).

(d)     *Undeliverable Distributions.*

If any distribution or notice provided in connection with the Chapter 11 Cases to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or otherwise is unclaimed, including distributions that are unclaimed due to the failure of any Holder of Allowed Secured Note Claims to comply with distribution procedures implemented pursuant to Section 6.3(c), the Disbursing Agent shall make no further distribution to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then current address or, in the case of a Holder of Allowed Secured Note Claims, such Holder complies with the distribution procedures implemented pursuant to Section 6.3(c).  On, or as soon as practicable after, the date

on which a previously undeliverable or unclaimed distribution becomes deliverable and claimed, the Disbursing Agent shall make such distribution without interest thereon. Any Holder of an Allowed Claim that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within one year after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall forever be barred and enjoined from asserting such Claim against any of the Debtors, the Estates, the Reorganized Debtors, or their property. After the first anniversary of the Effective Date, all property or interests in property not distributed pursuant to this Section 6.3 shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code. Such property or interests in property shall be returned by the Disbursing Agent to the Reorganized Debtors, and the Claim of any other Holder to such property or interests in property shall be discharged and forever barred. Nothing contained herein shall require, or be construed to require, the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

Section 6.4.    *Setoff and Recoupment*.

The Reorganized Debtors shall be permitted, but not required, to set off against any Claim (other than the Secured Note Claims and Secured Credit Agreement Claims, which Claims shall not be subject to setoff, recoupment, or reduction of any kind), or the distributions to be made hereunder on account of such Claim, any claims of any nature whatsoever the Debtors have against the Holder of such Claim; *provided*, *however*, that neither the failure to exercise such setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim the Reorganized Debtors may have against such Holder. Nothing herein shall be construed to release rights of recoupment of parties other than the Debtors in respect of claims by the Debtors against such parties.

Section 6.5.    *Surrender of Cancelled Notes, Instruments, or Securities*.

(a)    Any Holder of any Claim evidenced by the instruments, securities, or other documentation cancelled under Section 4.5 (including the Prepetition Agent and the Indenture Trustee) shall surrender such applicable instruments, securities, or other documentation to the Reorganized Debtors or, in the case of the Indenture Trustee, certify in writing, upon written request, that such instrument, security, or other documentation has been cancelled, in accordance with written instructions to be provided to such Holder by the Reorganized Debtors, unless waived in writing by the Debtors or the Reorganized Debtors.

(b)    With respect to any Secured Note held in the name of DTC, DTC shall surrender the Secured Note to the Indenture Trustee, and the Indenture Trustee shall, upon written request, surrender such note to the Reorganized Debtors or certify in writing that such Secured Note has been cancelled.

(c)    In the Reorganized Debtors' discretion, any distribution required to be made hereunder on account of any Claim shall be treated as an undeliverable distribution under Section 6.3(d) pending the satisfaction of the terms of this Section 6.5.

(d)    Subject to Section 6.6, other than for instruments, securities, or other documentation certified as cancelled by the Indenture Trustee in accordance with Section 6.5(a-

b), any Holder of any Claim evidenced by the instruments, securities, or other documentation cancelled under Section 4.5 that fails to surrender such applicable instruments, securities, or other documentation in accordance with Section 6.5(a-b) within two years after the Effective Date shall have such Claim, and the distribution on account of such Claim, discharged and shall forever be barred from asserting such Claim against any of the Reorganized Debtors or their respective property. Such distributions shall be treated as unclaimed property as provided in Section 6.3(d).

Section 6.6.    *Lost, Stolen, Mutilated, or Destroyed Notes.*

In addition to any requirements under any applicable agreement, any Holder of any Claim evidenced by the instruments, securities, or other documentation cancelled under Section 4.5 (including the Prepetition Agent and the Indenture Trustee) and required to be surrendered under Section 6.5(a-b), which instruments, securities, or other documentation have been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such instruments, securities, or other documentation, (a) deliver evidence of such loss, theft, mutilation, or destruction that is reasonably satisfactory to (x) in the case of Secured Notes, the Indenture Trustee, and (y) in all other cases, the Reorganized Debtors, and (b) deliver to the Reorganized Debtors such security or indemnity as may be required by the Reorganized Debtors to hold the Reorganized Debtors harmless from any damages, liabilities, or costs incurred in treating such Entity as the Holder of such Allowed Claim. Such Holder shall, upon compliance with this ARTICLE VI, be deemed to have surrendered such instruments, securities, or other documentation for all purposes hereunder.

Section 6.7.    *Fractional and Minimum Distributions.*

Notwithstanding anything contained herein to the contrary, no fractional shares of Reorganized Holdings Common Stock and no fractional dollars of Cash shall be distributed. For purposes of distribution hereunder on account of such Claims, fractional shares and fractional dollars shall be rounded to the nearest whole unit (with any amount less than one-half share or one-half dollar, as applicable, to be rounded down). The total number of authorized shares of Reorganized Holdings Common Stock to be distributed to holders of Allowed Secured Note Claims shall be adjusted as necessary to account for the foregoing rounding.

Notwithstanding any other provision of this Plan, the Disbursing Agent shall not have any obligation to make any distributions under this Plan with a value of less than $50, unless a written request therefor is received by the Reorganized Debtors from the relevant recipient at the address set forth in Section 11.7.

Section 6.8.    *Manner of Payment Under Plan of Reorganization.*

The Disbursing Agent shall be authorized, in its discretion, to make any Cash payment required to be made hereunder by check or wire transfer.

Section 6.9.    *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Disbursing Agent shall comply with all applicable withholding and

reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

# ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 7.1.    *Prosecution of Objections to Claims.*

    (a)    *Reorganized Debtors*

On and after the Confirmation Date, the Reorganized Debtors shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to all Claims and be permitted to settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Reorganized Debtors shall also have the right to resolve any Disputed Claim outside the Bankruptcy Court and under applicable governing law. Any objections to Claims must be filed by the Claims Objection Deadline.

Section 7.2.    *Estimation of Claims.*

The Reorganized Debtors shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors (or the Reorganized Debtors, as the case may be) previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors (or the Reorganized Debtors, as the case may be) may elect to pursue any supplemental proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

Section 7.3.    *Payments and Distributions on Disputed Claims.*

Notwithstanding any other provision to the contrary herein, no payments or distributions shall be made hereunder with respect to all or any portion of any Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by Final Order, and such Disputed Claim has become an Allowed Claim. Moreover, notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on any Claim during the period after the Petition Date.

Section 7.4.    *Debtors' Rights and Defenses Preserved.*

Except as expressly provided in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors will, after entry of the Confirmation Order, have and retain any and all rights and defenses that any Debtor had with respect to any Claim against such Debtor as of the Petition Date, including rights to set off against any Claim, or the distributions to be made hereunder on account of such Claim, any claims of any nature whatsoever such Debtor has against the Holder of such Claim.  All Claims of any Entity that owes money to a Debtor shall be disallowed unless and until such Entity pays, in full, the amount it owes such Debtor.

Section 7.5.    *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim against a Debtor is a Disputed Claim, no payment or distribution provided under the Plan with respect to such Debtor's Estate shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim, in whole or in part.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

Section 8.1.    *Conditions Precedent to Confirmation.*

The Confirmation Order shall not be entered unless and until such Confirmation Order is in form and substance satisfactory to the Debtors and reasonably satisfactory to the Majority Secured Noteholders and confirms, without modification or qualification, the provisions of the Plan requiring payment in full in Cash of the Secured Credit Agreement Claims on or prior to the Effective Date.

Section 8.2.    *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms herein:

(a)    the Confirmation Order shall have been entered on the docket for the Chapter 11 Cases;

(b)    the Confirmation Order shall have become a Final Order;

(c)    the execution and delivery of (i) the Exit Facility Documents, (ii) the Stockholders Agreement, (iii) a new management incentive plan, (iv) the New Management Agreements, and (v) all other documents and agreements necessary to implement the terms of the Plan; *provided*, that the deemed execution and delivery of the Stockholders Agreement pursuant to Section 4.15 shall be sufficient to satisfy the requirement in this Section 8.2(c)(ii).

(d)    the proceeds of the Exit Facilities shall be made available to the Reorganized Debtors to fund the distributions hereunder;

(e)     the Reorganized Holdings Certificate of Incorporation and the certificates of incorporation for the Reorganized Holdings Subsidiaries shall have been duly filed with the Delaware Secretary of State;

(f)     all authorizations, consents and approvals determined by the Debtors to be necessary to implement the terms of the Plan shall have been obtained;

(g)     the fees and expenses payable under Section 2.4, requests for which have been submitted to the Debtors, shall have been paid in full;

(h)     all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full; and

(i)     all other actions necessary to implement the terms of the Plan shall have been taken.

Section 8.3.     *Waiver of Conditions*.

Any condition set forth in this ARTICLE VIII (other than the condition set forth in Section 8.2(a)) may be waived, in whole or in part, at any time by the Debtors without notice or leave or order of the Bankruptcy Court.

Section 8.4.     *Modification of Plan*.

The Debtors shall be permitted to amend, supplement, or modify the Plan at any time, subject to the restrictions and requirements under section 1127 of the Bankruptcy Code, and except to the extent such amendment, supplement, or modification affects a party's right of consent hereunder and such consent has not been previously obtained.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

Section 8.5.     *Effect of Withdrawal or Revocation*.

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Plan is so revoked or withdrawn, or if the Effective Date fails to occur, then the Plan shall be deemed null and void in its entirety and of no force or effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim against or Equity Interest in any Debtor or any other Entity, or to prejudice in any manner any further proceedings involving (i) any Debtor or the rights of any Debtor or any other Entity, (ii) the Majority Secured Noteholders, (iii) the Prepetition Agent or Prepetition Lenders, (iv) the Exit Facility Agents or Exit Facility Lenders, or (v) the Indenture Trustee.

Section 8.6.     *Reservation of Rights*.

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the Filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to

be, an admission or waiver of any rights of any Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

Section 8.7.    *Substantial Consummation of Plan.*

Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

# ARTICLE IX

# EFFECT OF PLAN CONFIRMATION

Section 9.1.    *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtors, all current and former Holders of Claims and Equity Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

Section 9.2.    *Discharge of Claims.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Equity Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action that arose before the Effective Date, in each case whether or not: (i) a Proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Equity Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests, subject to the Effective Date occurring.

Section 9.3.    ***Releases.***

(a)        ***Releases By the Debtors.  For good and valuable consideration, the adequacy of which is hereby confirmed, upon the Effective Date, the Debtors and the Reorganized Debtors, in their individual capacities and as debtors in possession, shall be deemed forever to release, waive, and discharge all (i) Avoidance Actions and (ii) all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities (other than the rights of the Debtors or Reorganized Debtors to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent,***

33

**matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against any of the Releasees; *provided, however*, that there shall be no such release, waiver, or discharge on account of claims or obligations in respect of (x) any loan, advance, or similar payment made by the Debtors or their affiliates to or for the benefit of any Releasee, or (y) any continuing contractual obligation owed by such Releasee to or for the benefit of the Debtors.**

(b) *Releases By Holders of Claims*. **Upon the Effective Date, each Releasor, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Secured Note Shares or Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights to enforce the obligations of the Debtors and the Reorganized Debtors under the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement against any of the Debtors, the Reorganized Debtors, or the Releasees.**

Section 9.4. *Exculpation and Limitation of Liability*.

**None of the Debtors, the Reorganized Debtors, or the Releasees shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or Holdings Equity Interest, or any other party in interest in the Chapter 11 Cases, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence, willful misconduct, or bad faith as determined by a final order entered by a court of competent jurisdiction.**

Section 9.5. *Injunction*.

(a) *General*. **All Entities who have held, hold, or may hold Claims or Holdings Equity Interests (other than the Claims that are reinstated under Section 3.2 and Section 4.14) and all other parties in interest in the Chapter 11 Cases, along with their respective current and former employees, agents, officers, directors, principals, and affiliates, permanently are enjoined, from and after the Effective Date, from (i) commencing or**

34

**continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors or Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors, or (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, on account of such Claims or Holdings Equity Interests; *provided, however,* that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan.**

(b) *Injunction Against Interference With Plan*. **Upon entry of the Confirmation Order, all Holders of Claims and Holdings Equity Interests and their respective current and former employees, agents, officers, directors, principals, and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim, by accepting distributions pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Section 9.5.**

Section 9.6.    *Claims Related to Pension Plan*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, no claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities against any person or entity arising under the Pension Plan or arising under ERISA with respect to the Pension Plan shall be released, exculpated, discharged, enjoined, or otherwise affected by the Plan or the Confirmation Order.

Section 9.7.    *Term of Bankruptcy Injunction or Stays*.

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 9.8.    *Termination of Subordination Rights and Settlement of Related Claims*.

The classification and manner of satisfying all Claims and Holdings Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, sections 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim or Holdings Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be permanently enjoined. Accordingly, distributions under the Plan to Holders of Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

Section 9.9.    *Preservation of Rights of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and have the exclusive right to enforce, after the Effective Date, any claims, rights, and Causes of Action that the Debtors or the Estates may hold against any Entity (other than actions, including Avoidance Actions, released pursuant to Section 9.3(a)), including all Causes of Action against any Entity on account of indebtedness and any other Causes of Action in favor of the Reorganized Debtors or their Estates.  The Reorganized Debtors shall be permitted to pursue such retained claims, rights, or Causes of Action, as appropriate (other than actions, including Avoidance Actions, released pursuant to Section 9.3(a)), in accordance with the best interests of the Reorganized Debtors.

## ARTICLE X

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order, and the Chapter 11 Cases to the fullest extent permitted by law, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of (i) any request for payment of any Administrative Claim, (ii) any and all objections to the allowance or priority of Claims or Equity Interests, including, without limitation, any objections to claims brought by the Debtors or the Reorganized Debtors, and (iii) any other actions taken by the Reorganized Debtors in accordance with their authority under the Plan;

(b)    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Plan or the Bankruptcy Code under sections 330, 331, 503(b), 1103, and 1129(c)(9) of the Bankruptcy Code;

(c)    Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which any Debtor or Reorganized Debtor may be liable, and hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(d)    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)    Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date, including any motions, adversary proceedings, contested or litigated matters, and any other matters brought by the Reorganized Debtors in accordance with their authority under the Plan;

(f)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such other documents;

(h)     Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(j)     Hear and determine any rights, claims, or Causes of Action held or reserved by, or accruing to, the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code, the Plan, the Confirmation Order, or, in the case of the Debtors, any other applicable law;

(k)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(m)     Determine any other matters that may arise in connection with or that relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Confirmation Order;

(n)     Enter an order of final decree closing the Chapter 11 Cases;

(o)     Hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     Hear and resolve all matters involving the nature, existence, or scope of the Debtors' discharge;

(q)     Hear and resolve all matters related to the property of the Estates from and after the Confirmation Date; and

(r)     Hear and resolve such other matters as may be provided in the Confirmation Order or as may be authorized by the Bankruptcy Code.

Notwithstanding anything set forth in this ARTICLE X, the Bankruptcy Court shall not retain jurisdiction over the Exit Facilities or any disputes arising thereunder from and after the occurrence of the Effective Date.

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.1.   *Payment of Statutory Fees*.

All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date.

Section 11.2.   *Section 1145 Exemption*.

Pursuant to section 1145(a) of the Bankruptcy Code, the shares of Reorganized Holdings Common Stock issued under the Plan shall be exempt from registration under section 5 of the Securities Act and any other state or local law requiring registration for the offer or sale of a security and may be resold by holders thereof without registration, unless the holder is an "underwriter" (as defined in section 1145(b)(l) of the Bankruptcy Code) with respect to such securities, in each case, subject to the terms thereof, applicable securities laws and the Reorganized Holdings Constituent Documents, as applicable.  As provided in Section 4.15, Reorganized Holdings Common Stock will be subject to the Stockholders Agreement.

Section 11.3.   *Governing Law*.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule, or regulation is applicable, or to the extent that an exhibit or supplement to the Plan provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

Section 11.4.   *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 11.5.  *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit or schedule to the Plan, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

Section 11.6.  *Filing of Additional Documents.*

The Debtors (or the Reorganized Debtors, as the case may be) shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Section 11.7.  *Service of Documents.*

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered (or, in the case of notice by facsimile transmission, when received and telephonically confirmed) addressed as follows:

> Holley Performance Products Inc.
> 1801 Russellville Road
> Bowling Green, Kentucky 42101
> Attn: Thomas W. Tomlinson
>
> with copies to:
>
> Pepper Hamilton LLP
> Hercules Plaza, Suite 5100
> 1313 Market Street
> P.O. Box 1709
> Wilmington, Delaware 19899
> Attn: David B. Stratton
> Attn: Evelyn Meltzer
>
> - and -
>
> Ropes & Gray LLP
> One International Place
> Boston, Massachusetts 02110
> Attn: James M. Wilton
> Attn: James A. Wright III

Section 11.8.  *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date, (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code, and any applicable non-

bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors, the Majority Secured Noteholders, the Indenture Trustee, and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated to the extent, if any, of their participation in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

Section 11.9.  *Exemption from Certain Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, no stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax shall result from, or be levied on account of, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of any lease or sublease, or (d) the making or delivery of any deed or other instrument of transfer, under, in furtherance of, or in connection with, the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property.  Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date that close on or after the Confirmation Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

Section 11.10. *Tax Reporting and Compliance*.

The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.  All distributions pursuant to the Plan shall be subject to all tax withholding and reporting requirements imposed on the Debtors by applicable law.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms the Disbursing Agent believes are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Section 11.11. *Schedules and Exhibits*.

Other than for purposes of Section 11.5, all exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

Section 11.12. *No Prejudice*.

If the Confirmation Order is vacated or the Effective Date has not occurred within one year of the last day of the Confirmation Hearing, then (a) the Confirmation Order shall be vacated, (b) the Plan shall be null and void in all respects, (c) no distributions under the Plan shall be made, (d) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date, and (e) nothing contained in the Plan or the Disclosure Statement shall:  (i) be deemed to constitute a waiver or release of (x) any Claims by any creditor or (y) any Claims against, or Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors, the Majority Secured Noteholders, the Indenture Trustee, the Prepetition Agent or Lenders, or the Exit Facility Agents or Lenders; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Majority Secured Noteholders, the Prepetition Agent or Lenders, or the Exit Facility Agents or Lenders in any respect.

Section 11.13. *Allocation of Payments*.

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest.

Section 11.14. *Dissolution of Statutory Committees.*

All Statutory Committees appointed in the Chapter 11 Cases, if any, shall be dissolved on the Confirmation Date.

Dated: April 13, 2010

Respectfully Submitted,

HOLLEY PERFORMANCE PRODUCTS
HOLDINGS, INC.

_____
Thomas W. Tomlinson
Chief Executive Officer
and Chief Financial Officer

HOLLEY PERFORMANCE PRODUCTS INC.

_____
Thomas W. Tomlinson
Chief Executive Officer
and Chief Financial Officer

HOLLEY PERFORMANCE SYSTEMS, INC.

_____
Thomas W. Tomlinson
Chief Executive Officer
and Chief Financial Officer

NITROUS OXIDE SYSTEMS, INC.

_____
Thomas W. Tomlinson
Chief Executive Officer
and Chief Financial Officer

WEIAND AUTOMOTIVE INDUSTRIES, INC.

_____
Thomas W. Tomlinson
Chief Executive Officer
and Chief Financial Officer